# TOWN CLOSE ASSOCIATES *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF NEW CANAAN
## (14959)

Landau, Spear and Spallone, Js.

Argued March 25—officially released July 9, 1996

*Kenneth R. Slater, Jr.*, with whom were *Louis Ciccarello* and, on the brief, *Carl R. Ficks, Jr.*, for the appellant (defendant).

*Timothy S. Hollister*, with whom was *Aline Goldback*, for the appellee (plaintiff).

SPALLONE, J. This appeal arises from the denial by the New Canaan planning and zoning commission (commission) of the plaintiff's application for a special permit and site plan approval to construct a mixed use development project that includes residential units dedicated to affordable housing. The plaintiff appealed from the commission's decision to the trial court, pursuant to General Statutes § 8-30g.[1] The trial court rendered

[1] General Statutes § 8-30g provides in relevant part: "Affordable housing land use appeals procedure. (a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income, for at least twenty years after the initial occupation of the proposed development; (2) 'affordable housing application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing . . . (4) 'commission' means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) 'municipality' means any town, city or borough, whether consolidated or unconsolidated.

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district of Hartford-New Britain. Affordable housing appeals shall be heard by a judge assigned by the chief court administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such cases to a small number of judges

judgment reversing the commission's decision. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In 1984, the New Canaan Fuel and Lumber Company (New Canaan Fuel) owned a 3.6 acre plot of land in downtown New Canaan. New Canaan Fuel submitted an application to the commission to construct a large office building on the land. The commission denied that application and New Canaan Fuel appealed. That appeal and other attendant litigation was settled by a stipulated judgment in December, 1986. Pursuant to the stipulated judgment, New Canaan Fuel agreed to reduce the size of the office building, to construct commuter parking spaces and to dedicate a 400 foot strip of property to the town of New Canaan to allow future street widening. In return for these concessions, the commission promised to

so that a consistent body of expertise can be developed. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. . . .

"(c) Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.

"(d) Following a decision by a commission to reject an affordable housing application or to approve an application with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, the applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. . . ."

issue all the permits necessary for the construction of the office building. New Canaan Fuel, however, never constructed the office building.

In early 1992, the plaintiff secured an option to purchase the 3.6 acre parcel of land from New Canaan Fuel.[2] The parcel of land was zoned Business A. The commission, in 1985, had amended its Business Zone A regulations to allow, by special permit, the construction of affordable housing developments. On December 15, 1992, the plaintiff filed an application with the commission seeking a special permit and site plan approval to construct a development project including 104 residential units and 14,790 square feet of retail and office space. The plaintiff proposed to designate 20 percent of the residential units as affordable housing as defined in General Statutes § 8-39a,[3] thus qualifying as an affordable housing development under § 8-30g (a).[4]

The commission held three public hearings on the plaintiff's application. On April 27, 1993, the commission denied the application, without prejudice to the filing of redesigned plans, citing seventeen reasons for its denial, including instances of noncompliance with the zoning regulations. On May 14, 1993, in accordance with § 8-30g (d), the plaintiff submitted a modified plan

[2] The plaintiff has since purchased the subject property.

[3] "[General Statutes] Sec. 8-39a. 'Affordable housing' defined. As used in this title, 'affordable housing' means housing for which persons and families pay thirty per cent or less of their annual income, where such income is less than or equal to the area median income for the municipality in which such housing is located, as determined by the United States Department of Housing and Urban Development."

[4] Public Acts 1995, No. 95-280, § 1, increased the minimum percentage of units required to be conveyed by deeds containing the specified covenants from 20 percent to 25 percent. Section 3 of that act specified that the increase in the minimum would take effect from its passage on July 6, 1995, and would apply "to any affordable housing application pending on such date and for which the commission has not rendered a decision." The commission first rendered a decision on the plaintiff's application on April 27, 1993. Therefore, the 20 percent minimum applies to this case.

designed to respond to the commission's reasons for denial. After another public hearing, the commission, on June 21, 1993, again denied the application without prejudice, citing fourteen of the original seventeen reasons. One of the fourteen reasons cited by the commission for its denial was the development's potential impact on traffic in the area. The commission did not specifically correlate any of the fourteen reasons for its denial to any substantial public interests to be protected by its decision. Thereupon, the plaintiff appealed to the Superior Court pursuant to § 8-30g.

In its brief to the trial court, the commission articulated three substantial public interests[5] to be protected by its decision: (1) the integrity of its affordable housing regulations; (2) the protection of property values against the excessive size and bulk of the structure; and (3) the preservation of existing traffic conditions. The commission's brief to the trial court did not specify, however, how its fourteen reasons for denial supported its assertion that its decision was necessary to protect these three public interests. The trial court examined whether the three public interests satisfied the four requirements of § 8-30g (c) (1).

In its memorandum of decision, the trial court, as directed by § 8-30g (c) (1), first reviewed the commission's fourteen reasons for denying the plaintiff's application. The trial court determined that nine of the reasons for denial were not supported by sufficient evidence.[6] One of the reasons not supported by sufficient evidence was the commission's concern about

---

[5] See General Statutes § 8-30g (c) (1) in footnote 1.

[6] General Statutes § 8-30g (c) provides that the burden shall be on the commission to prove that its decision and the reasons cited for such decision are supported by "sufficient evidence." See also *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 151–52, 653 A.2d 798 (1995) (sufficient evidence standard applies to affordable housing appeals of the decisions of commissions acting in either a legislative or an administrative capacity).

traffic congestion.[7] Therefore, the trial court did not need to consider traffic congestion as a substantial public interest under the three remaining subdivisions of subsection (c).

The trial court then examined (1) whether the commission's decision was necessary to protect the two remaining substantial public interests, as directed by § 8-30g (c) (2), and (2) whether those public interests outweigh the need for affordable housing, as directed by § 8-30g (c) (3). In discussing the second public interest cited by the commission, the trial court stated that the commission produced no evidence regarding "the nature or extent of any claimed detrimental effect on neighboring properties." Thus, the trial court determined under subdivision (2) that the commission's denial was not necessary to protect local property values. Finally, the trial court, quoting this court in *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 312, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995), rejected the remaining public interest advanced by the commission because " '§ 8-30g does not contemplate a denial of an affordable housing . . . application on the ground that it does not comply with the underlying zoning of an area.' " Applying subdivision (3), the trial court determined that maintaining the integrity of New Canaan's own affordable housing regulations did not outweigh the need for affordable housing.

On appeal, the commission claims that the trial court (1) improperly concluded that the commission, in order to enforce its zoning regulations, must prove that the public interests advanced by its decision clearly outweigh the need for affordable housing,[8] and (2) improp-

---

[7] The trial court noted that New Canaan's own traffic engineer agreed that the impact on traffic would be minimal.

[8] The trial court did not need to reach the question of whether preserving the integrity of New Canaan's affordable housing regulations outweighed

erly refused to review the legal effect of the stipulated judgment between New Canaan Fuel and the commission.

I

The commission first asserts that § 8-30g (c) (3), which requires a commission to prove that the substantial public interests that form the basis for its denial of an affordable housing application outweigh the need for affordable housing, should not be applied where, as here, a specific site has already been zoned for affordable housing. The commission asserts, instead, that subdivision (3) is applicable only where a zoning authority has determined that a specific site is inappropriate for an affordable housing project.[9] Thus, under the commission's theory, once a specific site has been zoned for affordable housing and a development plan for that site has been denied, a zoning authority, after addressing the inquiries in § 8-30g (c) (1) and (2),[10] can

the need for affordable housing under § 8-30g (c) (3). Under *Wisniowski* v. *Planning Commission*, supra, 37 Conn. App. 312, a municipality's own affordable housing regulations cannot be a substantial public interest in an affordable housing land use appeal. Therefore, the commission could not have proven that its decision was necessary to protect a substantial public interest under § 8-30g (c) (3).

Thus, the commission has failed to prove under § 8-30g (c) (2) how its denial of the plaintiff's affordable housing application is necessary to protect any of the three stated substantial public interests. Nevertheless, because the trial court utilized the balancing test of § 8-30g (c) (3) to dispense with the maintenance of the town's own affordable housing regulations as a substantial public interest, and in the interests of clarity, we will address the commission's first claim.

[9] The commission adopts the labels of "site specific" and "plan specific" grounds for denial to apply to § 8-30g (c) (3) and (4) respectively. This distinction was established by the United States District Court for the District of Connecticut in *Huntington Branch, NAACP* v. *Huntington*, 844 F.2d 926, 939 (2d Cir. 1988).

[10] Under § 8-30g (c) (2) a commission is "required to show that, on the basis of the evidence in the record, it reasonably could have concluded that it could not simultaneously grant the zone change and protect the public interest." *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 166, 653 A.2d 798 (1995).

disregard subdivision (3) and attempt to carry the burden imposed on it by subdivision (4). The commission asserts that the proper inquiry under subdivision (4) is "whether reasonable changes to the development plan can be made to conform the plan to the requirements of the regulations."[11] The commission claims that "[n]o [c]ommission could prove that zoning regulations governing the design of residential housing projects outweigh the community's need for affordable housing." As a result, the commission argues, "municipalities are powerless to enforce site development standards with respect to affordable housing development plans."

In support of its view, the commission attempts to link the decision in *Huntington Branch, NAACP* v. *Huntington*, 844 F.2d 926 (2d Cir. 1988), to § 8-30g. In *Huntington*, the Circuit Court established a test for determining whether a municipality violated Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 through 3631. In setting forth that test, the court drew a distinction between site specific and plan specific justifications that a municipality might assert in denying a development plan application where that denial had a discriminatory impact. *Huntington*, in turn, was cited in the report of the state "Blue Ribbon Commission on Housing,"[12] (Blue Ribbon Report) which originally proposed the affordable housing appeals procedure. The commission reasons, therefore, that implicit in the statute is the distinction established by the *Huntington* court.

"[T]he construction and interpretation of a statute is a question of law for the courts . . . . In construing a

[11] Actually, under § 8-30g (c) (4), the commission must prove that the substantial public interests to be protected by its denial of an affordable housing application "cannot be protected by reasonable changes to the development."

[12] The report was officially entitled "State of Connecticut Blue Ribbon Commission on Housing, Report and Recommendations to the Governor and General Assembly, February 1, 1989."

statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, [and] to the legislative policy it was designed to implement . . . . Generally, when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . [In sum], a statute . . . should not be interpreted to thwart its purpose." (Citations omitted; internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* 228 Conn. 498, 507–508, 636 A.2d 1342 (1994).

We conclude that the legislature did not intend to differentiate or distinguish between site specific and plan specific grounds for denial of an affordable housing application. The language of the statute itself is clear and unambiguous. Initially, we note that the statute applies to "*any* application made to a commission in connection with an affordable housing development . . . ." (Emphasis added.) General Statutes § 8-30g (a) (2). As our Supreme Court noted in a different context, "the statute contains no exceptions or qualifications limiting the definition of an affordable housing application to certain types of applications to zoning commissions. . . . [W]e construe the language of § 8-30g to apply to every type of application filed with a commission in connection with an affordable housing proposal." *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* supra, 228 Conn. 508–509. Because § 8-30g applies to every type of application, it necessarily applies whether an application is submitted to change the zoning of a particular site or is submitted to build an affordable housing development on land previously zoned for affordable housing. See *Kaufman* v. *Zoning Commission,* 232 Conn. 122, 137, 653 A.2d 798 (1995)

(§ 8-30g applies to both zone change review and site plan review).

More to the point, while the commission concedes that a trial court must apply § 8-30g (c) to the appeal of a zoning commission's denial of an affordable housing application, it argues that § 8-30g (c) (3) and (4) are essentially mutually exclusive and are to be applied in different contexts. The commission makes this assertion even though subdivisions (3) and (4) are joined by the word "and." The commission's interpretation, however, "would render the conjunctive 'and' meaningless and would [therefore] . . . 'set aside the plainly expressed intention of the legislature.'" *Marsala* v. *Bridgeport*, 15 Conn. App. 323, 326, 544 A.2d 1917, cert. dismissed, 209 Conn. 808, 548 A.2d 437 (1988), quoting *State ex rel. McCarthy* v. *Watson*, 132 Conn. 518, 536–37, 45 A.2d 716 (1946). Therefore, the language of § 8-30g requires the commission to prove that the interests to be served by the enforcement of its zoning regulations outweigh the need for affordable housing.

The legislative history of § 8-30g buttresses our conclusion.[13] The commission relies on the Blue Ribbon Report's citation of *Huntington* to assert that the legislature intended that § 8-30g contain the dichotomy between site specific and plan specific. We note, however, that the Blue Ribbon Report's proposed statute does not contain that distinction.[14] Indeed, in its recom-

---

[13] We too rely on the Blue Ribbon Report. "[I]t is clear . . . that because the legislature adopted the Affordable Housing Act in response to the [Blue Ribbon] report, it took into consideration all the concerns, findings, and conclusions of the [Blue Ribbon Report's authors]." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 531 (*Berdon, J.,* concurring).

[14] The Blue Ribbon Report's Affordable Housing Appeals Procedure provided in pertinent part: "The Affordable Housing Appeals Judge shall reverse the decision of the local commission or eliminate some or all of the conditions imposed, unless the evidence in the record establishes that the reasons given by the commission for its adverse decision were (1) bona fide and legitimate; (2) that they directly and substantially protect public health and

mendations, the land use subcommittee stated in the Blue Ribbon Report that "the Subcommittee . . . believes that too often the . . . important concern of providing an adequate supply of housing at affordable prices has been ignored in the decisions of some local land use commissions. . . . [I]t appears that many times the local commissions' decisions elevate vaguely-stated and relatively unimportant concerns over the important need to build affordable housing." State of Connecticut Blue Ribbon Commission on Housing, Report and Recommendations to the Governor and General Assembly, February 1, 1989, p. A-7. In light of the foregoing language, § 8-30g (c) (3) is designed specifically and deliberately to shift the balance from traditional zoning concerns, including plan specific concerns, in favor of affordable housing. In commenting on the burden this framework imposes upon a commission,[15] the report stated that "[t]he Subcommittee is sensitive to the strongly expressed concern of municipalities that they might lose control over the pace and direction of land development in their communities. Nonetheless . . . the Subcommittee was unable to develop any other proposal that would ensure sufficient consideration is given to the affordable housing needs of those not already adequately housed in the municipality." Id., p. A-9. Thus, the Blue Ribbon Report emphatically states the necessity of applying all four elements of § 8-30g (c). In addition, the commission fails to cite any remarks by legislators that demonstrate that the legislature intended that the statute incorporate the distinction between site specific and plan specific.

Finally, in reviewing the policy underlying § 8-30g, we note that it is a remedial statute that " 'must be

---

safety concerns that are significantly more important than the need for affordable housing in the community that would be satisfied by the proposal; and (3) that deficiencies cited by the commission cannot be corrected by reasonable changes in the proposal. . . ."

[15] See footnote 14.

liberally construed in favor of those whom the legislature intended to benefit.' " *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 140. Adopting the commission's interpretation, however, could impede or frustrate the purpose of the statute by allowing a zoning commission to avoid § 8-30g (c) (3), arguably the highest of the four evidentiary hurdles found in § 8-30g (c). Under the commission's interpretation, a municipality could amend its zoning regulations ostensibly to permit affordable housing developments, but then, acting under the pretext of its other zoning regulations, effectively preclude the construction of an affordable housing development. Such a result is contrary to the letter, spirit and legislative history of § 8-30g.

The commission contends that our interpretation of § 8-30g (c) forces it to "shoulder the Herculean burden" of proving that the integrity of its zoning regulations outweighs the need for affordable housing. While we disagree that applying all four subdivisions of subsection (c) is so difficult as to constitute a mythological feat, we do note that "[t]he burden of proof established in § 8-30g is a specific, narrow standard that a commission must satisfy on appeal." *Wisniowski* v. *Planning Commission*, supra, 37 Conn. App. 313. "Instead of simply questioning whether the application complies with [traditional zoning] regulations, however, under § 8-30g, the commission [must consider] the rationale behind the regulations to determine whether the regulations are necessary to protect *substantial* public interests in health, safety, or other matters." (Emphasis in original.) Id., 317–18. Finally, a commission's inability to satisfy the four subdivisions of § 8-30g (c) does not mean that its regulations or concerns will be completely disregarded; the statute also provides that the trial court "shall wholly or partly revise, modify, remand or reverse the decision . . . in a manner consistent with the evidence before it."

We conclude that the trial court correctly interpreted § 8-30g (c) to require the commission to prove that the public interests to be advanced by its denial of the plaintiff's affordable housing application outweigh the need for affordable housing.

## II

The commission next claims that the trial court improperly refused to consider the legal effect of the stipulated judgment between the prior landowner, New Canaan Fuel, and the commission. Under that stipulated judgment, dated December 24, 1986, the commission agreed to issue all the necessary permits and approvals for New Canaan Fuel to construct a large office building. In return, New Canaan Fuel agreed to dedicate a 400 foot strip of property to the town of New Canaan for future street widening and to construct 130 parking spaces to be made available for commuters. The stipulated judgment also specified that New Canaan Fuel would have twenty-four months from that date to commence construction. That time limit was later extended to 1990. New Canaan Fuel, however, did not construct the building and the commission did not issue any permits. The commission did not attempt to enforce the stipulated judgment with New Canaan Fuel. In 1992, the plaintiff obtained an option to purchase the land from New Canaan Fuel and has since purchased it. New Canaan Fuel, however, still owned the land when the commission issued its decision regarding the affordable housing application. There is no evidence to suggest that any restrictions were placed on the deed from New Canaan Fuel to the plaintiff.

In its denial of the plaintiff's application, four of the commission's reasons for the denial cited the stipulated judgment between New Canaan Fuel and the commis-

sion. These reasons, in the words of the trial court, "reflect the commission's belief that the [stipulated] judgment was binding on [the plaintiff]." The trial court held that the determination of the legal effect of the stipulated judgment on the parties before it was beyond the trial court's proper scope of review in the § 8-30g appeal. The trial court did note that if the commission were entitled to apply the stipulated judgment against the plaintiff, the commission's denial did not state why the reasons citing the stipulated judgment constituted a substantial public interest or how such a public interest could outweigh the need for affordable housing.

The commission claims that, because a trial court hearing an appeal of a zoning commission's decision can decide questions of law, the trial court properly could have determined that the stipulated judgment was enforceable. Other than parking and traffic considerations, the commission asserts that such a resolution is necessary for it to apply its zoning regulations to the plaintiff's application. Specifically, the commission claims that, without knowing the total size of the plot of land, it cannot calculate the total number of units permitted under its density zoning regulations. Because the plaintiff's site plan application included the land the commission claims was dedicated to the town, the commission asserted in its denial that the plaintiff's development plan is too dense.[16]

We conclude that the trial court correctly determined that it could not properly resolve the rights of the parties in the strip of land that New Canaan Fuel had agreed to dedicate to the town in the stipulated judgment. A stipulated judgment is regarded as a contract between the parties. *Griffin* v. *Planning & Zoning Commission*, 30 Conn. App. 643, 650, 621 A.2d 769 (1993), citing

---

[16] In its brief, the plaintiff asserts that, during public hearings, it had voluntarily offered to convey the 400 foot strip of land to the town.

*Bryan* v. *Reynolds*, 143 Conn. 456, 460, 123 A.2d 192
(1956). "Therefore, the interpretation of a stipulated
judgment, like the interpretation of a contract, is usually
a question of fact." *Griffin* v. *Planning & Zoning Com-
mission*, supra, 650, citing *Gurliacci* v. *Mayer*, 218
Conn. 531, 567, 590 A.2d 914 (1991). The interpretation
of a contract is a question of law only where the lan-
guage is definitive and unambiguous. *Levine* v. *Massey*,
232 Conn. 272, 278, 654 A.2d 737 (1995).

We may not, nor could the trial court in its role as
a court of appeal, properly determine the intent of New
Canaan Fuel and the commission in entering into the
stipulated judgment. The stipulated judgment raises
several issues to be settled in terms of the rights and
duties between the commission, the plaintiff and New
Canaan Fuel, including the continued validity of the
dedication of the strip of land.[17] We note, however,
that even if the commission had previously prevailed
in enforcing the stipulated judgment's provision for the
dedicated land and had consequently denied the plain-
tiff's application for failure to comply with its zoning
regulations, in any subsequent appeal of that denial,
the commission would have borne the burden imposed
on it by § 8-30g as we have interpreted it in part I of
this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] Whether the town of New Canaan accepted the dedicated land is itself
a question of fact. "A valid acceptance [of an offer to dedicate land] may
be either express or implied. . . . A variety of actions by a municipality
have been held sufficient to furnish a factual basis for a finding of implied
acceptance. . . . [T]o be effectual an acceptance must occur within a reason-
able period of time after the intent to dedicate the land has been manifested.
. . . The mere lapse of time, in itself, is not determinative." (Citations
omitted; internal quotation marks omitted.) *Katz* v. *West Hartford*, 191 Conn.
594, 596–98, 469 A.2d 410 (1983).