[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF APPEAL
The plaintiff, City of Torrington, appeals from a decision of the defendant, the Harwinton Zoning Commission (HZC), in which the HZC granted special permit and site plan approval to Jerry Saglimbeni, an additional defendant. The HZC's decision would allow Saglimbeni to construct a residential community complex on the property of Robert A. D'Andrea and Anthony D'Andrea (D'Andrea), also defendants in this case.
 BACKGROUND
D'Andrea's property is located in Harwinton and is bounded to the north by the Torrington city line. (Return of Record [ROR], Exhibit Q-1). On or about August 23, 1989, the Torrington CT Page 9879 Planning and Zoning Commission approved a subdivision application to develop property located in Torrington which abuts the D'Andrea property to the north on the Harwinton/Torrington town line. (ROR, Ex. D1) This subdivision was known as "Doolittle Heights Section III" (Doolittle III). As a condition of the approval of Doolittle III, the Torrington Planning Zoning Commission required that D'Andrea place a covenant on the Harwinton land records concerning the D'Andrea property. (ROR, Ex. D4). The covenant provided that the City of Torrington's Engineering Department must first approve any public or private access from the D'Andrea property to a Torrington road. (ROR, Ex. D4).
On or about November 27, 1989, D'Andrea made an application to the HZC to change the zone in which his property is located from "Town Residential Zone" to "Multi-Family Zone." (ROR, Ex. TA1). The HZC denied that application on or about April 23, 1998. (ROR, Ex. TA1). D'Andrea appealed the HZC's denial on June 5, 1990, and D'Andrea and the HZC stipulated to a final judgment on January 28, 1991. (ROR, Ex. TA1).
The stipulated judgment sustained D'Andrea's appeal and changed the zone designation. (ROR, Ex. TA1). The stipulated judgment also contained three important provisions: (1) D'Andrea was allowed to build 36 units; (2) D'Andrea could submit to the HZC a single application for a special permit; and (3) the HZC acknowledged that D'Andrea had adequate "usable" area. (ROR, Ex. TA1).
On April 27, 1998, Saglimbeni applied to the HZC for special permit and site plan approval of a development to be located on approximately 10.5 acres of D'Andrea's land. (ROR, Ex. C1). Saglimbeni's application sought the approval of a 36 unit residential common interest ownership community with one site plan showing the development having full vehicular access in Harwinton and gated emergency access only into Torrington. (ROR, Ex. R-1) A second site plan in the application sought approval of the development with unrestricted access to both Harwinton and Torrington. (ROR, Ex. Q-1). Both site plans were submitted to the HZC for consideration. (ROR, Ex. Q-1, R-1)
Since the site was located within five hundred feet of the Torrington city line, the HZC, pursuant to General Statutes §8-3h, notified the Torrington Town Clerk of the pendency of Saglimbeni's application. (ROR, Ex. T1). On or about May 27, CT Page 9880 1998, the Torrington Planning and Zoning Commission voted unammously to recommend that no access be allowed from the site to any Torrington street. (ROR, Ex. T1). Notice of the Torrington Planning and Zoning Commission's decision was sent to the HZC on June 1, 1998. (ROR, Ex. T1).
On various dates between June 9, 1998 and July 27, 1998, the HZC held public hearings, pursuant to General Statutes § 8-3c
(b), to provide the public with an opportunity to be heard on Saglimbeni's application. (ROR, Ex. C23-C26). Harwinton's Town Engineer had recommended to the HZC that any access to Torrington roads should be on an emergency basis only. (ROR, Ex. TA12).
In addition, Saglimbeni's application proposed that all of the drainage from the D'Andrea site enter into an onsite detention basin, the outlet of which would connect to the Torrington storm sewer system. (ROR, Ex. Q-2.)The proposed connection to Torrington's storm sewer requires Torrington's approval. (ROR, Ex. C24, pp. 3-4). Torrington did not approve the connection to the storm sewer because Saglimbeni did not demonstrate that Torrington's storm water system would have the capacity to handle the D'Andrea site's generated storm water. (ROR, Ex. T6)
The Saglimbeni application also sought to discharge the sewage from the D'Andrea site to the Harwinton Water Pollution Control Authority's (HWPCA) sewer main in Mountain View Drive. (ROR, Ex. Q-1). The HWPCA did not provide formal approval for the sewage disposal because Saglimbeni did not formally apply for a sewer connection permit. (ROR, Ex. L)
At the public hearing in June and July 1998, Saglimbeni's attorney referred to the 1991 judgment as binding on the HZC despite any of the Harwinton zoning regulations which may impose a greater restriction or higher standard on the use of the D'Andrea site. (ROR, Ex. C23, p. 14; Ex. C24, p. 8).
On or about Sentember 17, 1998, the HZC unammously and conditionally approved the application and site plan which showed the development as having full and unrestricted vehicular access into both Harwinton and Torrington. (ROR, Ex. C18, pp. 2-5; Q-1). The major conditions of the HZC's approval were that Saglimbeni must receive final approval from the Torrington Engineering Department and the HWPCA before Saglimbeni could begin construction on the D'Andrea site. (ROR, C18). Notice of the CT Page 9881 HZC's approval was published in the Waterbury Republican-American on September 25, 1998. (ROR, Ex. C21). Torrington filed this appeal and served all defendants on or about October 7, 1998.
 JURISDICTION
"A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Bridgeport Bowl-O-Rama, Inc. v. Zoning Board ofAppeals, 195 Conn. 276, 283, 487 A.2d 559 (1985). Failure to comply with the statute implicates the court's jurisdiction and may result in dismissal. Capalbo v. Planning Zoning Board ofAppeals, 208 Conn. 480, 485, 547 A.2d 528 (1988).
A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). General Statutes § 8-8
(a) provides that an aggrieved person "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the (zoning commission)." Torrington alleges that it owns property "which abuts and/or is located within 100 feet" of Saglimbeni's property in Harwinton.
Torrington submitted a copy of an assessor's card which demonstrates that Torrington owns land within 100 feet of the subject property. (Plaintiffs' Ex. C). Torrington has pleaded and proven that it owns land that abuts the subject property and therefore, Torrington is statutorily aggrieved.
B. Timeliness and Service of Process
General Statutes § 8-8 (b) states an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the day that notice of the decision was published as required by the general statutes." General Statutes § 8-8 (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." CT Page 9882
Torrington commenced this appeal by service of process on October 8, 1998, thirteen days after the Waterbury Republican-American published notice of the approval on September 25, 1998. Torrington served the Harwinton Town Clerk, the chairman of the HZC, Saglimbeni and D'Andrea. (Sheriff's Return, dated October 7, 1998). Torrington submitted a copy of the published notice. Torrington's appeal is timely and served on the proper parties.
C. Citation
"In administrative appeals, the citation is the writ of summons that directs the sheriff or some other officer to seek out the defendant agency and to summon it to a particular setting of a particular court on a specified day." (Internal quotation marks omitted.) Tolly v. Dent of Human Resources, 225 Conn. 13,18, 621 A.2d 719 (1993); see also Charles Holdings, Ltd. v.Planning Zoning Board, 208 Conn. 476, 478, 544 A.2d 633 (1988). Torrington properly filed its citation in accordance with §8-8 (b).
D. Recognizance and Surety
"The authority issuing a citation to the appeal shall take from the appellant, unless the appellant is an official of the municipality, a bond or recognizance to the board, with surety to prosecute the appeal to effect and comply with the orders and decrees of the court." General Statutes § 8-8 (h). Torrington has provided a recognizance to comply with the statute.
 SCOPE OF REVIEW
A trial court "review[s] the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." Wnuk v. Zoning Board of Appeals, 225 Conn. 691,695-96, 626 A.2d 698 (1993). "The trial court ha[s] to decide whether the board correctly interpreted the section of the [zoning regulations] and applied it with reasonable discretion to the facts." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991).
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." Bloom v. ZoningCT Page 9883Board of Appeals, 233 Conn. 198, 208, 658 A.2d 559 (1993). "Where a zoning board of appeals does not formally state the reasons for its decision. the trial court must search the record for a basis for the board's decision." Id., 208.
"The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206. "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Irwin v. Planning Zoning Commission, 244 Conn. 619,629, 711 A.2d 675 (1998).
 DISCUSSION
The HZC cited two reasons for granting the special permit and site plan: "(1) [t]he application, as presented, meets the regulations, as modified by the [1991] Judgment; and (2) [b]ased on the public record, the [HZC] has taken into careful consideration, the health, safety and welfare of the citizens of Harwinton." (ROR, Ex. C19).
Torrington alleges that "the [HZC] acted illegally, arbitrarily and in abuse of the discretion vested in it" in five ways: (1) the HZC failed to administer the zoning regulations by approving an application which did not comply with many of the requirements set forth in the zoning regulations; (2) the HZC wrongfully allowed the applicant to submit for consideration two different site plans, in one application; (3) the HZC wrongfully considered two different site plans in one application; (4) the HZC illegally approved the application subject to approvals of agencies over which the HZC has no control; and (5) the HZC failed to follow the recommendation of their own engineer whose recommendation was that the access on the Torrington side be emergency only. (Appeal, pp. 10-11).
First, Torrington alleges that the HZC acted improperly when it approved the application that did not comply with the zoning regulations. The HZC contends that it based its application on the regulations as modified by the 1991 stipulated judgment.
"A stipulated judgment is regarded as a contract between the parties." Town Close Associates. v. Planning Zoning Commission,42 Conn. App. 94, 107, 679 A.2d 378 (1996). A stipulated judgment reflects the "powerful interest in the promotion of settlement of CT Page 9884 litigation by agreement of the parties." Sendak v. RidgefieldPlanning Zoning Commission, 7 Conn. App. 238, 242, 508 A.2d 781
(1986). The Connecticut Supreme Court "has clearly recognized that this interest applies to administrative proceedings by explicitly approving a stipulation for judgment in an administrative appeal then pending before it. This interest would be seriously undercut if, after a planning commission has in good faith settled a pending appeal by agreeing to a stipulated judgment, that settlement could be challenged by a subsequent appeal by third parties." Id., 243.
"The other powerful competing social interest is the need for protection of the integrity of the land use planning process."Sendak v. Ridgefield Planning Zoning Commission, supra,7 Conn. App. 243. "This interest derives from the recognition that, where an initially unsuccessful applicant before a planning commission takes an appeal to the court, the applicant and the commission could abuse the entire process by collusively stipulating to a judgment in the applicant's favor, and thus evade both judicial review and effective scrutiny by potentially aggrieved neighbors whose attempts to intervene had not yet been acted upon." Id.
"Absent bad faith, collusion or other improper conduct by the parties, a planning commission's decision to settle an appeal by way of a stipulated judgment is not an official action or decision within the meaning of the statute, and a further appeal to the court does not lie from that decision." Sendak v.Ridgefield Planning Zoning Commission, supra,7 Conn. App. 244.[1]
Torrington has not claimed, nor has it made any showing that the 1991 stipulated judgment was the product of bad faith, collusion, or improper conduct by D'Andrea or the HZC, the parties to the judgment. Torrington has not cited any persuasive authority in Connecticut to permit this court to conclude that the 1991 judgment is void. Therefore, the court finds that the 1991 judgment cannot be disturbed.
Second, Torrington did not brief their remaining four allegations in the appeal. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." Merchant v. StateEthics Commission, 53 Conn. App. 808, 818, ___ A.2d ___ (1999). CT Page 9885
In addition, there is sufficient evidence that the HZC considered the welfare of the citizens of Harwinton when it approved Saglimbeni's special permit and site plan. The HZC was well aware of its regulations in 1991, and it was aware of the terms of the stipulated judgment. The HZC knew that in a "multifamily zone," the D'Andreas could construct dwellings that could accommodate more families than in a "residential family zone."
Having full knowledge of this information and their regulations, the HZC entered into the stipulated judgment.
In 1998, the HZC issued its approval subject to nineteen conditions. Before Saglimbeni can commence any construction, he must procure final approval from Torrington for curb cuts and access, the drainage system, the water connection and fire protection, as well as obtaining approval from various Harwinton departments. Absent Torrington's final approvals, Saglimbeni cannot proceed with construction.
The court finds that there is sufficient evidence in the record to support the HZC's approval. Adhering to the parameters of the 1991 judgment and the regulations, the HZC approved the Saglimbeni application. Therefore, Torrington's appeal is dismissed.
 CONCLUSION
For the above stated reasons, the appeal is dismissed.
BY THE COURT
PETER EMMETT WIESE, JUDGE