[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION OF DEFENDANTS STUART COOPER, ET AL TO ENFORCE STIPULATED JUDGMENT
 Procedural Background
On May 3, 2000, this court entered judgment pursuant to a stipulation signed by the parties providing for uses which they agreed were permitted on the plaintiff's (the Village) property located at 1680 Albany Avenue in Hartford.
The defendant movants (Neighbors) have alleged in their motion that a psychiatric treatment program known as Eagle House, initiated by the Village subsequent to the stipulated judgment violated the terms of the judgment. They have, accordingly, asked the court to order that the new program be terminated.
The stipulated judgment came about following a trial to this court concerning an alleged zoning violation brought by the defendant City of Hartford (City). The settlement resulted in a termination of that program known as the Pathway Program.
The judgment attempted to define the Village's permitted uses of their property in the future.
Those portions of the stipulated judgment pertinent to this motion are set forth herein:
 USE OF THE VILLAGE PROPERTY
The parties mutually agree that the Village shall be permitted to operate and use the site without opposition by the Parties, as a "children's home" as referenced in § 35-899 of the Hartford Zoning Regulations. The Parties agree that the term "children's home" shall be interpreted in the following manner:
 a. Children's home means a part-time or full-time residential program where the purpose is to take a child out of an environment that is a threat to the child and to provide a residence and protective care services for such child. The provision of medical or therapeutic treatment incidental to that residential program, including the provision of service to parents CT Page 11173 incidental to that residential program, is permitted. It is understood that except as provided above or in section d. below, day care services are not permitted. The Parties recognize the potential need for new construction to support and accommodate the programs offered by the Village and recognized in this Settlement Agreement. The Parties recognize that Section 35-853, Key to Table, Subsection E, on page 2316, of the Hartford Zoning Regulations, applies to all the agreed to uses herein. Except as otherwise provided in this paragraph, nothing in this Settlement Agreement shall be construed to constitute a waiver of the Parties' rights to pursue enforcement of the applicable zoning laws, including objections to construction for reasons other than the purposes or programs recognized by this Settlement Agreement.
 b. Children's home shall not mean (i) any program which provides an alternative program to detention; or (ii) any program for children referred from or by the Judicial Branch or the juvenile system; or (iii) any program of the Defendant of Children and Families for Children: for alleged violations of criminal law, pretrial supervision, probation, alternative sentencing or for court support services programs with outpatient substance abuse and/or mental health treatment services.
 c. Children's home shall not mean any program which has a primary purpose of providing medical care, therapeutic care, rehabilitative care, or psychiatric services, except to the extent that such services are permitted under section d. below.
 d. Children's programs which are substantially similar to programs permitted by the Zoning Ordinances of the City of Hartford in 1968 are permitted, provided however that such programs are not described in section b. above.
 e. The Parties agree that if the Village intends to offer or conduct a new program at the Site, which is not now offered at the Site, the Village shall provide forty-five days notice in writing of such program to the West End Civic Association and the Blue Hills Civic Association. CT Page 11174
There are two parties other than the Village and the Neighbors participating in the motion presently before the court, the intervening plaintiffs and the City of Hartford.
On December 1, 2000 the court granted intervenor status to a class of children who presently reside or will reside at the Eagle House. Intervention was permitted on a limited basis, however. The court restricted the intervenors to the issues presently before the court, i.e. whether or not the stipulated judgment had been violated.
The intervening plaintiffs' briefs addressed their constitutional rights and did not address the issues as ordered by the court. Consequently, the court will not consider the arguments raised by the intervening plaintiffs in their briefs.
As to the City, it is interesting, although not determinative of this motion, that the posture of the City changed during the course of the proceedings.
In March of 2000, by letter, its assistant corporation counsel, Ivan Ramos, stated that the Eagle House Program did not violate any zoning ordinances. During the course of trial, Mr. Ramos stated to the court that the City's position on this issue was now neutral. No specific reason for this turnabout was afforded to the court. Nevertheless, there is no claim by the City that the Eagle House Program is operating in violation of the zoning ordinance.
 The Competing Claims of the Village and the Neighbors
The Neighbors maintain that the Eagle House Program is not permitted under the terms of the stipulated judgment "use of the Village Property" section. They cite four specific reasons:
1. It violates paragraph a. because the therapeutic program is not incidental to a residential program, but primary;
2. a residential psychiatric treatment program is not a permitted use in an R-8 zone under the 1968 Hartford Zoning ordinance in violation of paragraph d.;
3. The Eagle House Program is specifically excluded under the judgment under paragraph c. because its primary purpose is to provide therapeutic care and is not a permitted exception under paragraph d.
4. Eagle House cannot survive under the exception provided in paragraph CT Page 11175 d. because it is not substantially similar "to programs permitted by the Hartford Zoning ordinance in 1968."
In addition, the Neighbors assert that the Village failed to give them the notice required (of the commencement of the Eagle House Program) as mandated by paragraph e of the "use" section.
The Village claims that the Eagle House Program is perfectly legal under the terms of the judgment and is not in violation of the zoning ordinance for the following reasons:
1. Although it does not strongly disagree that the program is primary and not incidental as described in paragraph c., it is excepted pursuant to paragraph d.;
2. A residential psychiatric treatment program is permitted under the 1968 zoning ordinance;
3. Any use that was ongoing in 1968 is permitted under the stipulated judgment.
4. The program is substantially similar to a program permitted by the 1968 zoning ordinance.
The Village further contends that notice was duly given pursuant to Section e. of the "use" paragraph of the judgment but even if it was not the Neighbors had actual notice within the time frame of the notice provision, thereby satisfying this requirement.
 Issues
This court must determine the following questions pursuant to the judgment entered into on May 3, 2000. The task of the court is two-fold: first it must resolve any questions arising out of the meaning of any portions of the judgment that are unclear; secondly, after such resolution, it must decide whether the Village has violated any of the provisions of the judgment which would require the court to grant the Neighbors motion to enforce.
These questions will be discussed serially below.
At the outset, it should be noted that since the burden of proof in this motion is on the movants (defendants) who have alleged a violation of the judgment, they must persuade the court as to their claims of fact and legal rights. Tait's Handbook of Connecticut Evidence § 3rd
ed. 2001 3.3. CT Page 11176
 Factual Determinations to be Made by the Court
In Torrington v. Zoning Commission, 63 Conn. App. 776, 789 (2001), the Appellate Court stated:
 "Because a stipulated judgment is considered to be a contract, "the interpretation of a stipulated judgment, like the interpretation of a contract, is usually a question of fact. Griffin v. Planning Zoning Commission, [30 Conn. App. 643, 650, 621 A.2d 1359
(1993)], citing Gurliacci v. Mayer, 218 Conn. 531, 567, 590 A.2d 914 (1991). The interpretation of a contract is a question of law only where the language is definitive and unambiguous. Levine v. Massey, 232 Conn. 272, 278, 654 A.2d 737 (1995)." (Internal quotation marks omitted.) Town Close Associates v. Planning Zoning Commission, 42 Conn. App. 94, 108, 679 A.2d 378, cert. denied, 239 Conn. 914, 682 A.2d 1014
(1996)."
This court determined at the outset that several provisions of the judgment were unclear. Parole evidence was taken at trial to assist the court in clarifying those provisions.
The questions to be resolved were:
(1) did the definition of "children's home" in paragraphs a. and c. constitute the only definition to be considered by the court or did paragraph d. constitute an exception to that definition, that is, if any medical program was primary and not incidental to a residential program was it illegal under the judgment?
(2) If paragraph d. provides an exception to Eagle House under zoning does its use nevertheless fail if the program is not substantially similar to a program permitted by the 1968 zoning ordinance?
(3) Was notice of the advent of the Eagle House Program given to the Neighbors pursuant to paragraph e.?
After hearing the evidence presented and examining the exhibits, the court has made the following findings as to the meaning of the above portions of the judgment:
1. The exclusivity of paragraphs a. and c. were in fact, modified by paragraph (d). (It is clear to the court that the program does not comply CT Page 11177 with paragraphs a. and c. because it is primary and not incidental to a residential program.) The court, however, accepts the testimony of Richard Kaplan when he stated that in negotiating the stipulation, the Village wanted to be able to continue programs similar to those in effect in 1968. The Board made it clear that they wanted those provision to continue. The court finds that paragraph d. is, in fact, an exception to paragraphs a. and c.
2. The court, having heard the testimony of Dr. Lynn Mangini, Dr. James Black, and Dr. Montgomery Winship, has concluded that the Eagle House Program is substantially similar to the program in place at the Village from at least 1952 through the time of the enactment of the 1968 ordinance and beyond. All of the children in those programs, as well as the Eagle House Program, received individual as well as group therapy under a clinically based therapeutic treatment agenda. The differences that do exist are due mainly to advances in the psychiatric profession in treatment and techniques.
3. The court finds that the Village complied with the notice provisions of paragraph e. by providing 45 days advance notice in writing of the new Eagle House Program.
It should be noted that there is no requirement of proof of receipt of notice in the judgment, but merely that notice be provided.
The testimony adduced at trial was that on May 18, 2000, Ms. Cooper, secretary to the president of the Village placed in the Village mail room a signed letter to the West End Civic Association along with a similar letter to the Blue Hills Civic Association. The president of the latter association responded indicating receipt. The Neighbor's witness on this issue, Mr. Dudley testified that he didn't receive any notice until September, 2000, but indicated that he may have given it (presumably earlier) to an association committee or simply misplaced or misfiled it. The court finds that such notice was duly sent and certainly that the Neighbors have failed to carry their burden of proving that it was not.
 Legal Determinations to be Made by the Court and Conclusions
Those parts of the judgment which are definitive and unambiguous become questions of law for the court's interpretation. Torrington v. ZoningCommission, supra, 789.
Those questions are:
1. Was a residential psychiatric treatment program a permitted use for the Village in an R-8 zone under the 1968 Hartford Zoning ordinance and CT Page 11178 thus permissible under paragraph
2. If so, was the factual finding by the court that the Village program is substantially similar (as defined by case law), to the 1968 programs make the program permissible by the ordinance?
3. Is any use that was ongoing by the Village in 1968 permitted to be continued under the stipulated judgment?
1 — Permitted Use Under the 1968 Zoning Ordinance
To resolve this question, the court must examine the history of the Village's use of this property from the time of its inception in 1809. Unquestionably, the evidence demonstrates that from its earliest beginnings, the Village was a protective agency for the neglected and orphaned and existed as a philanthropic organization embracing "philanthropic or eleemosynary uses".
This permitted use remained through revisions to the zoning ordinance in 1960 as the ordinance continued to allow unrestricted use as a philanthropic organization.
In 1968, the Village's authorization to operate changed in the words of the new ordinance from philanthropic to "existing children's homes and orphanages" (emphasis added). The ordinance imposed no restrictions on this category. No prohibition existed against the Village's providing medical treatment to its residents as it was then doing.
As the plaintiffs claim, and the court so finds, the uses existing in 1968 by the then existing orphanages and children's homes are specifically permitted in the revised ordinance.
Section 35-899 of the current City of Hartford Zoning Regulations provides that in the R-8 district "only existing orphanages and children's homes shall be permitted." See City of Hartford Zoning Regulations (Exhibit 7A) at pp. 2360-61. The Table of Permitted Uses at page 2328, by using the symbol E, permits such children's homes if they existed as of February 28, 1968. Additionally it specifies that such uses shall not be construed as nonconforming uses (p. 2316).
The court finds that the defendants have failed to show that the Village is in violation of the zoning ordinance.
It is also quite clear to the court that the Village's present use of the property, including the Eagle House Program, does not violate the ordinance. CT Page 11179
2 — Is the Eagle House Program substantially similar to programs permitted by the 1968 ordinance?
The stipulated judgment, imposes on the Village a further restriction. In order to be a present permitted use, the Program in question must be substantially similar to one permitted by the 1968 ordinance. (Of course, any "agreed to uses" under the stipulation would be excepted).
This court has already found that the Eagle House Program is substantially similar to programs in effect in 1968. It must further find that this factual finding comports with existing case law.
The court disagrees with the Neighbors assertion that "substantially similar and substantially identical" affords the measure of comparison applicable to this case. Hall v. Burns, 213 Conn. 446, 452 (1990). See also State v. Dontigney, 215 Conn. 646, 649-51 (1990).
The court is satisfied that its assessment that the Eagle House Program is substantially similar to programs in effect in 1968 is factually and legally correct.
3 — The final question for consideration is the Village's claim that all agreed to uses are permitted as of right whereas the Neighbors assert that such use must be shown to be permitted by the zoning ordinance.
The short answer to this question is that all existing uses in effect in 1968 are deemed to be authorized by the ordinance and unless restricted by agreement between the parties or deemed by a court to be in violation, they shall be deemed authorized by the present ordinance.
Since this court has already found the Eagle House Program not to be in violation of the stipulated judgment, no further finding is necessary.
Accordingly, the motion of the defendant Neighbors for enforcement of the stipulated judgment is denied for the reason that the court finds that the plaintiff Village is not in violation of the stipulated judgment of May 3, 2000.
Freed, J.