[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this matter, the first in a trilogy of administrative appeals currently before this court,[1] the plaintiff, AvalonBay Communities, Inc.[2] (Avalon), challenges a decision of the defendant, the Town of Orange Inland Wetlands and Watercourses Commission (commission). In June of 1998, the commission denied Avalon's revised wetlands permit application. Under its modified site development plan Avalon seeks to construct a 168-unit apartment complex, which incorporates an affordable housing component,[3] on two undeveloped lots — the 9.58 acre property includes approximately 1.3 acres of wetlands.
Avalon first claims that revised application involves no CT Page 12119 regulated activities and, therefore, the commission cannot exercise authority over its proposed site development plan. Alternatively, Avalon contends that if the commission has the requisite jurisdiction it, nevertheless, lacked substantial evidence for its conclusion that development of the site will create a significant adverse impact on the town's wetlands or watercourses and, consequently, that the commission acted arbitrarily and illegally in denying its revised wetlands permit application. Avalon further argues that commission's desire to prevent affordable housing from being built in the Town of Orange motivated its decision.
For the reasons that follow, the court finds that the record lacks substantial, reliable evidence to support the the commission's denial of the application and sustains the plaintiffs appeal. Because the commission may impose appropriate and reasonable conditions when issuing permits, the court remands the matter back to the commission for action consistent with its ruling.
 Factual and Procedural Background
On April 14, 1998, Avalon filed a revised wetlands permit application with the commission; this application sought to eliminate all regulated activities proposed in the original site development plan.
Avalon, a national real estate trust corporation and leading developer of affordable housing in the State of Connecticut, has a written agreement with Ernest Cuzzocreo and Cuzz-Acres-Orange Limited Partnership to purchase a 9.58 acre parcel of land, roughly rectangular in shape, located at the intersection of Edison Road and Prindle Hill Road in Orange, Connecticut. A 1.1 acre area of wetlands, characterized by Avalon's soil scientist, Otto Theall, as a wooded swamp, roughly divides the property in half. Like the original application, the revised site development plan includes an affordable housing component (of which 25%, i.e., 42 units, will be rented at below-market rates) and proposes constructing two apartment buildings on land west of the wetlands and four apartment buildings on the portion east of the swamp; as with the original plan, the revised application also proposes building a club house and pool on the eastern side of the property.
In an effort to address the commission's concerns, stated in its denial of the original application,[4] Avalon's revised CT Page 12120 wetlands application eliminated a raised wooden walkway through the wetlands; reduced the size of one of the apartment buildings, located on the eastern side of the property, so that its footprint no longer came within the 25-foot wetlands buffer zone and omitted making improvements to an existing dirt road. In addition, the revised plan proposed a reconfiguration of the storm water detention system.
The engineering and environmental science firm of Milone 
MacBroom prepared Avalon's revised wetlands permit application and, in connection with the application, submitted engineering and wetlands reports indicating that the proposed site development would not significantly or adversely impact the wetlands. Soil scientist, Otto Theall, of the firm Codespotti 
Associates, submitted a letter on behalf of Avalon, stating that the application involved no regulated activities.
At its April 28, 1998, meeting, after reviewing the relevant regulations and over the objection of Avalon's representative, the commission elected to hold a public hearing. The commission conducted the public hearing on May 26, 1998, and, after public comment, kept the hearing open in order to receive additional materials.
During the May 26, 1998, hearing, the commission heard from Joseph Williams, the attorney representing Avalon, Mark Forlenza from Avalon, John Gilmore, an engineer from Milone MacBroom, and Otto Theall the soil scientist from Codespotti Associates. Chris Copley from the environmental firm AKRF, Inc., also attended the hearing on behalf of Avalon.
Two individuals spoke in opposition to the permit. A neighbor, Milton Ramos, voiced concern that the development of this site would adversely affect Indian Lake. The second speaker, Gregory Cava, attorney for the abutting property owners, the Wallachs, expressed a variety of opinions and raised a number of questions regarding the potential, negative effects of the proposed plan.
On June 9, 1998, at its next scheduled meeting, the commission closed the public hearing; two weeks later, at its June 23, 1998 meeting, the commission unanimously voted to deny the plaintiffs revised application, "on the basis that it is regulated activity.[5]
Other than this tautological statement, the commission failed CT Page 12121 to issue a collective statement for its decision during the hearing; however, a June 29, 1998, letter written by the chair of the commission, Frederick O'Brien, states that the commission denied the permit because "(1) it involved regulated activities such that the impact on the wetlands would be significant (2) that the proposed regulated activities would inevitably degrade and pollute the wetlands (3) that the watercourse was going to be altered and a huge increase in impervious surface was contemplated, along with an alteration from sheet flow to point source directly feeding into the existing wetland, (4) that this alteration would be detrimental to the site and to abutting properties, (5) that the application relied upon off-site drainage to meet its target from runoff calculations, (6) that the off-site drainage was a regulated activity as to which the easement grantor had made no application and no commitment as to permanency, and (7) that the suggestion by the applicant that wetlands pollution could be eliminated by the fencing off of the wetland represented a threat to the safety of the residents who would be obligated to travel on foot on Prindle Hill Road."
The commission published legal notice of its decision on July 2, 1998, in the New Haven Register.
This appeal followed. On July 17, 1998, Avalon commenced this appeal and properly served the respective defendants, including the Commissioner of Environmental Protection (commissioner) and the commission pursuant to General Statutes § 22-43.
The commission, claiming that the court lacks subject matter jurisdiction, filed a motion to dismiss for insufficiency of process and service of process on September 9, 1998. The court (Corradino, J.) denied the defendant's motion on October 13, 1998. Subsequently, the commission filed, on October 19, 1998, an answer and return of record and, on November 30, 1998, a supplemental return of record.
Avalon, then filed a brief in support of its appeal on December 7, 1998; the commissioner filed a brief on January 11, 1999, but has taken no position with respect to the defendant's decision to deny Avalon's application; and, lastly, on January 29, 1999, the commission filed its brief.
On May 17, 1999, the court conducted a hearing on this administrative appeal.
General Statutes § 22a-43 governs wetlands appeals and, as CT Page 12122 with any appeal created by statute, the court may acquire and exercise jurisdiction only when the plaintiff complies with all relevant statutory provisions. See Munhall v. Inland WetlandsCommission, 221 Conn. 46, 50, 602 A.2d 566; Simko v. Zoning Boardof Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988).
 Aggrievement
Pursuant to General Statutes § 22a-43, "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive. . . . may, within the time specified in subsection (b) of section 8-8. . . . appeal to the superior court[.]" "Aggrievement consists of two elements: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision. . . . Second, the party . . . must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Brackets in original; internal quotation marks omitted.) Day v. City of Middletown, 245 Conn. 437, 441,716 A.2d 47 (1998). Aggrievement, a question of fact, must be determined by the trial court. Munhall v. Inland Wetlands Commission, supra,221 Conn. 46, 50.
Avalon alleges that it "is aggrieved as a matter of law in that it is the contract purchaser of the subject parcel[.]" On May 17, 1998, during the hearing conducted by the court, Avalon's representative testified that the plaintiff holds an option to purchase the 9.588 acre parcel that is the subject of this appeal. The plaintiff also submitted its contract with the present owner, Ernest Cuzzocreo and Cuzz-Acres-Orange, L. P., into evidence.
Prospective purchasers of property may be aggrieved by administrative agency decisions. See Town Close Associates v.Planning Zoning Commission, 42 Conn. App. 94, 97, 679 A.2d 378
(1996); RR Pool Home, Inc. v. Zoning Board of Appeals,43 Conn. App. 563, 569, 684 A.2d 1207 (1996).
Avalon contracted to purchase two lots (the 9.58 parcel) from Ernest Cuzzocreo and Cuzz-Acres-Orange, L.P., subject to receiving the appropriate permits from the town. Avalon possesses the requisite legal interest to establish aggrievement. The decision of the commission denying Avalon's permit application impairs Avalon's ability to develop this property and, consequently, "specifically and injuriously" affects its legal CT Page 12123 interests.
Accordingly, the court finds that the plaintiff has established aggrievement for the purposes of § 22a-43.
 Timeliness and Service of Process
An administrative appeal must be "commenced by service of process within fifteen days from the date the notice of the decision was published." General Statutes § 8-8 (b). General Statutes § 22a-43 requires that an aggrieved party serve notice of its appeal upon the "wetlands agency and the commissioner [of environmental protection]."
The board published notice of its decision in The New HavenRegister, July 2, 1998. On July 17, 1998, Avalon served copies of its appeal upon Ann M. Trotta, Assistant Town Clerk, Roy Cuzzocreo, a member (and former chair) of the commission, and Jane S. Scholl, Associate Attorney General, on behalf of the commissioner.
In its brief, the commission once again challenges the jurisdiction of the court. That issue must be resolved before the court may entertain the merits of the plaintiffs appeal. SeeCommunity Collaborative of Bridgeport, Inc. v. Ganim,241 Conn. 546, 552, 698 A.2d 245 (1997).
The commission claims that Avalon did not serve the chair of the commission and therefore failed to properly serve notice of the appeal as required by statute. This contention warrants little discussion.
General Statutes § 22a-43 does not require that the plaintiff serve the commission's chair. General Statutes § 22a-43 states, in pertinent part: "Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." The court (Corradino, J.), in ruling on the commission's motion to dismiss, noted that under the reasoning of Denehy v. Inland Wetlands, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 704881 (May 27, 1994) (Sullivan, J.) (11 C.L.R. 545), service on the town clerk proves sufficient to satisfy the requirements of § 22a-43. In addition, Avalon served the commissioner of environmental protection and also Roy Cuzzocreo, a member of the commission. The court concluded that the requirements of due process had been met.
CT Page 12124 Similarly, this court concludes that the municipality and commission received adequate notice of Avalon's appeal and has had ""sufficient opportunity to be heard and protect the interests of the public where necessary.'" Schwartz v. Planning Zoning Commission, 208 Conn. 146, 151, 543 A.2d 1339 (1988), quoting Simko v. Zoning Board of Appeals, supra, 206 Conn. 374,383. Accordingly, the court has jurisdiction to hear and decide this appeal.
 Standard of Review
"The purpose of the Inland Wetlands and Watercourses Act (act) is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with the need to protect the invaluable public resource of wetlands. See General Statutes 22a-36. The statute, and the regulations adopted to implement it, provide for an application and hearing process through which these competing interests are balanced. See General Statutes 22a-42a." Woodburn v. Conservation Commission,37 Conn. App. 166, 170, 655 A.2d 764 (1995).
General Statutes § 22a-42, "Municipal Regulation of Wetlands and Watercourses," sets forth the functions and responsibilities of municipal inland wetlands agencies. The jurisdiction "of an inland wetlands agency is extremely limited in that it can consider only matters that impact on designated wetlands areas."Tanner v. Conservation Commission, 15 Conn. App. 336, 339,544 A.2d 258 (1988). The commission, in reviewing permit applications acts in an administrative capacity and the trial court, on appeal, determines, on the basis of the record, whether substantial, reliable evidence exists to reasonably support the commission's decision. Strong v. Conservation Commission,28 Conn. App. 435, 440, 611 A.2d 427 (1992), cert. granted224 Conn. 902, 615 A.2d 1046, appeal dismissed, 226 Conn. 227, 230,627 A.2d 431 (1993).
The plaintiff bears the burden of proving that the commission acted improperly. Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995); and, further, "must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587, 628 A.2d 1286 (1993).
The trial court reviews the record to determine whether the commission "acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. ZoningCT Page 12125Board of Appeals, supra, 233 Conn. 198, 206. "In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence however, to support any such reasons must be substantial[.]" (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, supra,226 Conn. 579, 587-588. Evidence in the record will prove "sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Sweetman v. State ElectionsEnforcement Commission, 249 Conn. 296, 331, ___ A.2d ___ (1999). "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency s finding from being supported by substantial evidence." (Brackets in original; internal quotation marks omitted.) Forselle v. Conservation Commission,43 Conn. App. 239, 244, 682 A.2d 595 (1996).
"The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency[.]" (Internal quotation marks omitted.)Dumont v. Commissioner of Motor Vehicles, 48 Conn. App. 635,640, 712 A.2d 427 (1998). While the commission "is not required to believe any of the witnesses, including expert witnesses. . . . it must not disregard the only expert evidence available[.]" (Citation omitted.) Tanner v. ConservationCommission, supra, 15 Conn. App. 336, 341; Strong v. ConservationCommission, supra, 28 Conn. App. 435, 441 ("an agency cannot capriciously ignore the testimony of expert witnesses.") Moreover, when deciding matters involving technically complex issues, e.g., pollution control, the board must base its decision upon reliable, probative evidence, typically expert, for the nature and probability of any potential adverse impact on the wetlands. Feinson v. Conservation Commission, 180 Conn. 421, 429,429 A.2d 910 (1980).
"Judicial review of an administrative agency decision requires a court to determine whether this is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.)Altschul v. Salinas, 53 Conn. App. 391, 396, ___ A.2d ___ (1999). In short, the court is "limited to determining whether the commission's conclusions of fact were unreasonable, arbitrary, CT Page 12126 illegal or an abuse of discretion." (Internal quotation marks omitted.) Sweetman v. State Elections Enforcement Commission, supra, 249 Conn. 296, 332.
 Discussion
The plaintiff asserts three grounds for sustaining its appeal. Avalon claims that the commission lacked authority to review its permit application; that the commission denied its application in an effort to block affordable housing; and, lastly, that even if the commission has the authority to review Avalon's revised site development plan, the commission (and the record) lacks substantial evidence from which the commission could reasonably reach its ultimate conclusions.
A. Commission's Authority
The commission asserts that pursuant to General Statutes §22a-42 it has the requisite authority to review any plans that may affect the town's wetlands and watercourses. Avalon contends that its revised application involves no regulated activities and therefore, the commission could only exercise jurisdiction to the extent of concurring that the revised site development plan did not involve regulated activities and, therefore, that it did not require a wetlands permit. Avalon takes particular exception to the commission's decision to conduct a public hearing and maintains that the vote to conduct a public hearing must be supported by substantial evidence. The court disagrees.
General Statutes § 22a-42a (c)(1) indicates that the commission has the discretionary power, for the purposes of conducting a public hearing, to conclude that the proposed activities are likely to have a significant impact on the wetlands and watercourses. The town's regulations, § 9.1, Public Hearing, similarly state, in relevant part: "The Commission shall not hold a public hearing on an application unless the Commission determines that the proposed activity may have a significant impact on wetlands or water courses[.]" (Emphasis added.) Under the regulations, when the commission determines that the proposed activities may adversely impact the wetlands the commission is obligated to conduct a public hearing.
Under the principles which govern a court's review under the abuse of discretion standard, the court must make every reasonable presumption in favor of the commission's action and will not upset that decision unless the record indicates that the CT Page 12127 commission acted unreasonably and clearly abused its discretion. See Walton v. New Hartford, 223 Conn. 155, 169, 612 A.2d 1153
(1992) (abuse of discretion standard for trial court rulings).
At the April 28, 1998 meeting, the commission, after reviewing § 9.1 of the regulations, voted to conduct a public hearing. The commission s general familiarity with Avalon's site development plans, gained from Avalon's original wetlands permit application combined with information contained in the revised permit application, provides a sufficient and reasonable basis for the commission's decision to conduct a public hearing. From these two applications, the commission could reasonably infer that Avalon's effort to construct a large residential complex on 9.58 acres, when wetlands cover approximately 15% of site, might create an adverse effect.[6]
Accordingly, the court finds that the commission acted within its discretion when it subjected Avalon's revised application to public comment.
Avalon also contends that because none of the proposed activities connected with the revised site development plan involves a "regulated activity," as defined by statute and the regulations, the commission lacked the authority to review its permit application. Avalon claims that the primary concern raised by the commission, individuals walking through the 1.1 acre of wetlands, is exempt from review. Avalon correctly points to § 22a-40b (b)(2) for the authority that recreational activities, such as walking and hiking,[7] are permitted as nonregulated uses of wetlands. That, however, does not end the inquiry.
A wetlands commission may exercise jurisdiction over nonregulated activities if such activities "disturb the natural and indigenous character of the wetland or watercourse by removal or deposition of material, alteration or obstruction of water flow or pollution of the wetlands or watercourse[.]" General Statutes § 22a-40 (b)(2).
More generally, however, the commission enjoys a broad mandate with respect to reviewing applications that have the potential to adversely impact wetlands and watercourses. "The act gives broad discretion to agencies to preserve, protect and maintain the environment and ecology of the state's natural resources. . . . The discharge of the statutory responsibilities by local wetlands commissions may require commission members to reject an otherwise acceptable application because of its impact CT Page 12128 on the environment." (Citations omitted; internal quotation marks omitted.) Kaeser v. Conservation Commission, 20 Conn. App. 309,317, 567 A.2d 383 (1989). Unless otherwise provided by statute, the commission has the authority to determine whether an activity is subject to its wetlands regulations, i.e., a regulated activity.
In addition, although Avalon has proposed no activities that directly involve the wetlands located on the property, the revised application nevertheless includes land designated as an inland wetlands. The revised proposal involves activities (erection of structures) that may detrimentally affect these wetlands, which, consequently, subject Avalon's proposal to regulatory oversight. See Mario v. Fairfield, 217 Conn. 164, 171,585 A.2d 87 (1991). As such, the commission has the authority to review the application and impose appropriate conditions, e.g., erosion controls during the construction phase of the project, as a requirement of approval.
An evaluation of the proposed site development plan reflects that the record, as a whole, supports the conclusion that the revised proposal involves regulated activities (potential impacts of construction, sedimentation and erosion, surface water diversion, etc.) that, absent appropriate controls,[8] may significantly and adversely impact the wetlands.
Accordingly, the court finds that the commission had the requisite authority to review the plaintiffs permit application.
B. Pretext
Avalon alleges that even if the commission has the necessary jurisdiction to review its permit application, nevertheless, the commission's stated reasons disguised its actual motive — the commission, Avalon claims, denied the revised application in an effort to block affordable housing. The commission, not surprisingly, disputes this characterization.
The plaintiff bears the burden of proving partiality or improper motive. Woodburn v. Conservation Commission, supra,370 Conn. App. 166, 175. Although Avalon raises this issue, citing isolated comments of commission members, it, nevertheless, failed to adequately brief its claim that the reasons offered by the commission were merely a pretext to prevent affordable housing from being built in the town.
CT Page 12129 "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted. but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citations omitted; internal quotation marks omitted.) Merchant v. State Ethics Commission, 53 Conn. App. 808,818, ___ A.2d. ___ (1999).
Accordingly, the court will not address the merits of this claim.
C. Substantial Evidence
Having concluded that the commission has the requisite authority to exercise jurisdiction over the plaintiffs permit application and, further, that the plaintiff has failed the adequately brief the issue of improper motive, the court will address the gravamen of this appeal.
In its last claim, Avalon argues the commission lacked substantial evidence to draw its conclusion that the proposed site development plan will adversely and significantly affect the town's wetlands and watercourses.
The court must review the record to determine if there exists a logical basis for the facts found and the conclusions reached by the commission; if substantial evidence in the record supports any valid reason for denying the plaintiffs permit application, the court must sustain the decision of the commission. Samperi v.Inland Wetlands Commission, supra, 226 Conn. 579, 588-89.
"The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication." (Internal quotation marks omitted.)Barnett v. Board of Education, 232 Conn. 198, 211, 654 A.2d 720
(1995). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.)Altschul v. Salinas, supra, 53 Conn. App. 391, 396. "Substantial evidence, we observed, is evidence that carries conviction . . . CT Page 12130 It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." (Internal quotation marks omitted.) Hoyt-Bedford v. Connecticut State Board of LaborRelations, 147 Conn. 142, 147, 157 A.2d 762 (1960); Raczowski v.Zoning Commission, 53 Conn. App. 636, 641, ___ A.2d ___ (1999).
The commission, in a letter dated June 29, 1998, stated seven separate, although at times overlapping, grounds for denying Avalon's revised wetlands permit application; the court will discuss each individually.[9] Generally, however, the court notes that, based on the record, members of the commission did not appear to focus exclusively on questions properly within their jurisdiction nor fully comprehend the strictures of the applicable statutes and law. Three common misunderstandings hampered the commission's decision making process: either the commission went beyond the scope of its authority ("[am inland wetland agency is limited to considering only environmental matters which impact on inland wetlands." [Internal quotation marks omitted.] Huck v. Inland Wetlands Watercoures Agency,203 Conn. 525, 552, 525 A.2d 940 [1987]); or it disregarded the only expert evidence presented on complex technical matters (a "lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony[.]" Feinson v.Conservation Commission, supra, 180 Conn. 421, 429); or, most commonly, the commission simply lacked the factual basis necessary to establish a significant, adverse impact — i.e., that the proposed activities will or are reasonably likely to significantly pollute, injure or destroy the wetlands or watercourses of the town. A mere possibility or potential for harm, without more, cannot provided an adequate basis to deny a wetlands permit application. "An activity that merely impacts or affects wetlands is not a significant activity; the effect must be major or the impact must be significant." Keiser v.Conservation Commission, 41 Conn. App. 39, 44, 674 A.2d 439
(1996); Rockville Fish Game Club v. Inland Wetlands Commission,231 Conn. 451, 650 A.2d 545 (1994).
Although, as a matter of law, the court employs a deferential standard of review, it does not rubber-stamp an agency's decision. There must exist some basis in fact to support a commission's implicit calculus that the probability of harm and/or the severity of risk to the wetlands warrants its denial CT Page 12131 of an applicant's permit. See Forsell v. Conservation Commission, supra, 43 Conn. App. 239, 249 ("We conclude that the commission's decision that the plaintiffs' application proposed activities the impact of which on the existing . . . watercourses or wetlands was both likely and significant is not supported by substantial evidence.")
I.
The first reason cited by the commission, that the application "involved regulated activities such that the impact on the wetlands would be significant," lacks any specificity. As a general, conclusory statement it fails to disclose any particular facts from which one can conclude that the proposed site plan will adversely affect the wetlands. Regulated activities, as defined by statute, do not create a per se significant adverse impact on wetlands. The commission must find, based on the specific facts in the record, that the proposed regulated activities present an unreasonable, significant risk to the wetlands; moreover, whether the proposed regulated activities create an adverse impact on the wetlands poses a technically complex question, one that requires that the commission rely on expert opinions and testimony if members of the commission lack their own expertise or knowledge. Tanner v. ConservationCommission, supra, 15 Conn. App. 336, 341. The commission has not argued that members of the commission possess such expertise.
While the generic statement contained in the commission's first reason may ostensibly apply to any number of speculative harms raised during the public hearing, the commission, in its brief, relates this first reason to the potential effect of residents walking through the 1.1 acre of wetlands that separates the apartments on the western side from the club house and pool located on the eastern side of the property; accordingly, the court will address this reason from that perspective.
The commission claims that residents of the complex will cross through the woody swamp that bisects the property and that such foot traffic will significantly (and the commission's implicit conclusion) adversely impact these wetlands. At the May 26, 1998, hearing the commission questioned Avalon's removal of the elevated boardwalk through the wetlands.[10] The commission also heard testimony from Mr. Cava, an attorney representing the abutting property owner. Mr. Cava predicted that the residents of the complex would cross through the wetlands on Avalon's property and also trespass onto the Wallach's property and through the CT Page 12132 wetlands located there. Neither the commission nor Mr. Cava supplied any evidence, expert or otherwise, of the degree to which walking would disturb the natural and indigenous character of the wetlands.
The commission, in its brief, claims that Avalon itself provided the factual basis for denying the permit. The commission asserts that comments made by Avalon's experts at the September 9, 1997, hearing on the first application supports its finding that walking through the wetlands will cause a significant adverse impact on the wetlands. The commission argues that Avalon's emphasis on linking the eastern and western sections of the property, via a boardwalk through the wetlands, demonstrates that absent a such an artificial path, the wetlands will be adversely and significantly affected. While this is one possible interpretation of the comments made regarding the original site plan proposal, it is not, however, an inference that reasonably relies on facts in the record.
A reading of the record, in context, suggests that Avalon's original plans did not contemplate individuals walking through the wetlands absent some man-made structure nor did Avalon's representatives, at the September hearing on the initial permit application, discuss any environmental impacts associated with individuals walking in the swamp. Moreover, the statements[11]
of Avalon's representatives cited by the commission do not provide a reliable factual basis to conclude that walking through the swamp will unreasonably pollute the wetlands. Allowing residents of the complex to find their own way through the swamp, unaided by an artifical path, and any attendant environmental harms were never discussed in connection with the original application and so any comments regarding the wooden walkway or other constructed pathways are irrelevant to the commission's decision regarding the revised application, which contemplates none of those earlier options.
With respect to the revised application, Avalon did not present any evidence specifically related to the potential impact of foot traffic through the 1.1 acre of wetlands. It did, however, provide the only expert testimony regarding the impact of the overall proposed site plan. Avalon's experts concluded that the development of the site will not significantly or adversely impact any of wetlands or watercourses. Avalon submitted engineering and wetlands reports that indicated that the construction of the apartment complex would have no direct impact on the wetlands nor create a loss in any wetlands. Otto CT Page 12133 Theall, a certified soil scientist, speaking on behalf of Avalon, reiterated his earlier findings, i.e., that there would be no significant, adverse impact on the wetlands. No contrary expert opinion was presented to or by the commission rebutting the engineering or wetlands reports or Theall's findings.
The only testimony received in opposition to Avalon's proposal raises a host of possible evils but provides no reliable basis for concluding that walking through the wetlands will result in a significant, negative impact. Mr. Cava expressed generalized fears and recited a myriad of potential harms (including the possibility that residents would dump wood chips in the wetlands in an effort to keep their feet out of the "muck").[12] In response, Avalon agreed that it would, as a condition of approval, install fencing around the wetlands to ease the commission's fears that the wetlands would be unreasonably disturbed.
A search of the record reveals that there exists no factual basis for the commission's conclusion that walking, a nonregulated, recreational use of the wetlands, will cause a significant, adverse impact on these wetlands or that the proposed, revised site development plan will negatively impact the wetlands or watercourses of the town.
Accordingly, the first justification provided by the commission cannot provide a basis to sustain its decision.
II.
As with the first reason, the commission relates its second rationale to the potential impact on the wetlands from individuals walking through them. The commission states: "that the proposed regulated activities would inevitably degrade and pollute the wetlands."
Here again, there simply does not exist any reliable factual basis from which the commission could conclude that crossing through the wetlands will inevitably degrade and pollute the wetlands. Cava, the lone member of the public discussing this issue, raised purely speculative harms, which Avalon disputed. Absent some evidence tending show that harmful pollution will occur, i.e., that walking through the wetlands will unreasonably degrade and pollute the wetlands, the commission could not logically conclude, based on the (insufficiency of the) record, that significant pollution or serious degradation of these CT Page 12134 wetlands will occur.
Accordingly, the court cannot use the commission's second reason as a basis for sustaining its decision.
III.
In its brief, the commission failed to reference any specific concern or point to evidence the record with respect to reasons three, four, five and six; consequently, the court must undertake that task.
The commission states, as its third ground for denying the permit: "That the watercourse was going to be altered and a huge increase in impervious surface was contemplated, along with an alteration from sheet flow to point source directly feeding into the existing wetland[.]" This compound rationale requires that the court parse the statement and scour the record to find the basis of the commission's decision.[13]
A. The commission evidently relied on the remarks of Mr. Cava to conclude the first point, however, there is simply no reliable, probative evidence that the watercourse is going to be altered.[14] Earlier, Avalon' s engineer, Mr. Gilmore, addressed this concern and indicated that the proposed storm water management system would not result in an increase peak rate of run off.[15]
B. While the record supports the commission's finding that the impervious surface of the site will increase (the revised site development plan proposes structures and parking lots that will cover just a little less than half the Site), there exists no evidence in the record that this will create a significant, adverse impact upon the wetlands or watercourses. All surfaces rendered impervious by pavement or structures are not only outside the wetlands themselves but also outside the mandatory buffer zones. The site development uses town sewers and involves a sophisticated storm water detention system. At the September hearing on the initial application, Mr. Theall specifically addressed concerns that salt might run-off from the parking areas and contaminate the wetlands. "Usually when the salt is on the parking areas is in the wintertime, when the plants are dormant. So if you do have runoff from the parking lot which makes it down into the wetland area, the plants are dormant at that time so they don't generally get taken up by the roots. . . . Now, one thing also at this large wetland area is the farther it gets from CT Page 12135 that site the more and more diluted it's going to be."[16]
Avalon also agreed to install an oil separator in its storm water detention system to assure that contaminants would not flow into the town's wetlands or watercourses.
There exists nothing in the record to substantiate the commission's concerns that this increase in impervious surface will significantly and negatively impact the town's wetlands or watercourses.
C. Finally, the record does not factually support the remaining portion of the statement that "along with alteration from sheet flow to point source directly feeding into the existing wetland." The relevant portion of the transcript contains the following information provided by Mr. Gilmore: "Second, the issue of flooding or flow of water onto the Wallack [sic Wallach] piece. *** With regard to the pipe outlet, the pipe outlet is set right at the twenty-five foot setback. No ifs, and's, but's about it. It's right at the twenty-five foot setback line."[17]
There exists no evidence, substantial or otherwise, in the record disputing the expert testimony — expert testimony that contradicts the commission's conclusion. As the plans (sheet S-8) and Avalon's experts explaining those plans indicated, the revised proposal no longer involves a direct feed into the wetlands. Nor does the record provide a reasonable basis for concluding that if a direct feed did exist that it would be detrimental to the wetlands.
Consequently, none of the three points raised in the third stated reason provides substantial evidence from which the commission could reasonably conclude that the proposed activities will cause a significant, adverse impact on the wetlands.
Accordingly, the court concludes that the points contained in the third reason cannot justify the commission's decision.
IV.
Reason four states: "That this alteration would be detrimental to the site and to abutting properties[.]" This rationale depends upon a showing that the underlying facts stated in reason three are correct and further that there exists substantial evidence in the record to support the conclusion that this creates an adverse impact on wetlands. As previously discussed, there exists no factual basis to conclude that a CT Page 12136 wetland or watercourse will be altered. Further, the question properly before the commission is not whether the alteration of a wetland or watercourse detrimentally affects a site or abutting properties but, rather, whether such an alteration adversely impacts a wetland or watercourse. Again, there simply exists no reliable contrary evidence to Avalon's submissions that such negative impacts are not present.
Accordingly, the rationale of reason four cannot be used to sustain the commission's decision.
V.
Reason five states: "That the application relied upon off-site drainage to meet its target for runoff calculations[.]" Why this creates an adverse impact on the wetlands remains unclear. The commission failed to address reason five in its brief and a transcript of the proceedings provides little insight.[18]
The court notes that the regulations do not prohibit off-site detention basins for stormwater runoff. Without substantial evidence in the record that the regulations require that the rate of storm-water runoff must be calculated using only on-site systems or evidence that the lack of onsite systems negatively impacts wetlands and watercourses, there exists no reasonable basis in fact to support the conclusion of the wetlands commission.
Accordingly, reason five does not provide a sufficient basis to support the commission's decision.
VI.
The commission states as its sixth reason: "That the off-site drainage was a regulated activity as to which the easement grantor had made no application and no commitment as to permanence." Here again, the commission has failed to provide any guidance for how, even if these facts were correct, they would constitute a significant, adverse impact on the wetlands and thereby lead to the conclusion that their absence warrants a denial of the wetlands permit (as opposed to a condition of approval for the permit).
Secondly, the regulations do not require that the grantor of an easement submit an application to the wetlands commission, nor can the court think of a plausible reason to require such a redundancy, since the applicant's site plans incorporate and CT Page 12137 detail the grantor's property. Finally, as the record makes clear, Avalon provided the wetlands commission with a redacted copy of its contract with Ernest Cuzzocreo and Cuzz-Acres-Orange L.P. and all relevant amendments. These documents show, unequivocally, that Ernest Cuzzocreo agreed to grant Avalon a perpetual easement. As a matter of law, a perpetual easements run with the land, in perpetuity, and as such a grantee has the legal right to enforce its easement against any subsequent title holder. See Middletown Commercial Associates Ltd Partnership v.City of Middletown, 42 Conn. App. 426, 440, 680 A.2d 1350. ("[A]n easement implies an interest in land, which ordinarily is created by grant and is permanent." [Internal quotation marks omitted.])
While the lack of an easement in a plan that proposes using a neighboring property to minimize impacts on wetlands or watercourses may create a legitimate concern for the commission, once an easement has been obtained the issue becomes immaterial to the commission's decision making. The only relevant question becomes whether or not the proposed conditions made possible by the easement cause a negative impact on the town's wetlands or watercourses. Here, as discussed previously, the commission lacked any reliable, substantial evidence that the off-site detention basin located on the neighboring property will create an adverse impact on the wetlands.
Accordingly, the sixth justification cannot provide a legitimate basis for sustaining its decision.
VII.
Finally, in its last stated reason, the commission returns full circle. The seventh justification used by the commission states: "that the suggestion by the applicant that wetlands pollution could be eliminated by the fencing off of the wetland represented a threat to the safety of the residents who would be obligated to travel on foot on Prindle Hill Road."
First, the court notes that Avalon asserts that this statement mischaracterizes its offer, which Avalon claims it proffered to mitigate concerns raised at the public hearing. Avalon disagreed then and continues to dispute that significant pollution will result from individuals walking through the wetlands. More substantively, from the court's perspective, is that this rationale does not provide a legal basis for the commission's decision. The commission may consider a number of factors; General Statutes § 22a-41; but these must be viewed CT Page 12138 through the prism of how such activity impacts the wetlands. The commission does not enjoy the broad regulatory powers of a zoning commission nor may wetlands agencies operate as surrogate zoning commissions or even "little" EPA's. Samperi v. Inland WetlandsAgency, supra, 226 Conn. 579, 599 ("local inland wetland bodies are not little environmental protection agencies.") If a wetlands commission bases its decision on considerations appropriate to planning and zoning decision-making bodies it exceeds its scope of authority.
While the commission s concerns for the safety of residents of the apartment complex are laudable, they are nevertheless not within its jurisdiction. Absent some showing that this activity will adversely and significantly impact the wetlands, how safely residents get from one side of the property to the other, whether by car or by foot, is not an appropriate consideration for the wetlands commission and cannot provide a legal basis for its denial of Avalon's revised wetlands permit application. Moreover, even if the commission could demonstrate a connection among these modes of travel, the wetlands and public safety, there exists no substantial, reliable evidence that either driving back and forth or walking along the perimeter of the site will injure the wetlands or create a public safety hazard.
Accordingly, the final reason cited by the commission cannot form a basis to sustain its decision.
 Conclusion
In conclusion, the court finds that the defendant commission had the requisite authority to review and approve the plaintiffs revised wetlands permit application; that the plaintiff failed to establish that the commission acted with an improper motive; that recreational, nonregulated activities, including walking through the wetlands, nevertheless, may be subject to oversight by the wetlands commission if substantial, reliable evidence exists to support the conclusion that an unreasonable disturbance of the wetlands will result and; finally, that a review of the record does not provide substantial, reliable evidence for the facts found or a logical basis for the conclusions drawn by the defendant commission.
Accordingly, the court remands the matter back to the commission so that it may determine, based on the existing administrative record, what, if any, reasonable conditions or modifications[19] are appropriate prior to issuing the wetlands CT Page 12139 permit in accordance with this court's decision.
It is so ordered.
By the court.
MUNRO, J.