[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. PROCEDURAL HISTORY
Landworks Development, LLC is the holder of an option to purchase 80.3196 acres of property located in Farmingtown and New Britain. On April 14, 2000, Landworks submitted three applications that constitute an application to secure approvals to construct a 404-unit apartment complex on 67.5701 acres of the property located in the Town of Farmington. Landworks proposed 101 units of the 404-units as affordable housing units pursuant to Connecticut General Statutes Section 8-30g. Specifically, Landworks sought (1) to change the zone of the property from its current single family residential zone classification to affordable housing zone classification under the Farmington Zoning Regulations (2) to amend the existing affordable housing zone regulation and (3) to obtain site plan approval for the 404-unit development. On July 24, 2000 the application was modified to reduce the number of units from 404 to 384 units, with 96-units classified as affordable units.
Landworks presented the application at a public hearing spanning three meetings of the Town of Farmington Planning and Zoning Commission beginning on July 10, 2000, continuing to July 24 and concluding on July 31.
On October 2, 2000 the Commission denied the application. On October 6, 2000, the Commission informed Landworks of the denial, citing four substantial public interests that they found would be harmed by this application. The reasons cited were: (1) traffic impacts and traffic circulation including traffic safety, (2) public safety, (3) CT Page 1790 environmental impacts, (4) unreasonable impairment to the public trust in natural resources pursuant to Section 22a-19 of the Connecticut General Statutes. Legal notice of the Commission's decision was published in the newspaper on October 12, 2000. The instant appeal was commenced on October 27, 2000. The Court heard oral argument and testimony on November 30, 2001.
II. FACTS
The property at issue is located in a residential zone abutting Batterson Park Road, just north of the New Britain-Farmington border. The applicant proposes to maintain 36.5 of the 67.5 acres as an open space corridor. The plan proposed 20 multi-story apartment buildings, a community building, swimming pool, sidewalks, driveways, and garages and large parking areas with capacity for 818 vehicles. (Return of Record Items 87 88).
On July 5, 2000, a group of twenty concerned citizens representing an association known as Neighborhood Alert filed petitions to intervene as parties pursuant of the Connecticut Environmental Protection Act, Connecticut General Statutes 22a-19, to raise environmental issues posed by the application. (Return of Record Item 70). On July 24, 2000 a senior wetland scientist described four wetlands and watercourse areas which were not shown on the site plan. The scientist, Mr. Bud Titlow, testified that a buffer of between 1,000 feet to 1,600 feet might be necessary to satisfactorily protect the vernal pool on the property. The applicant had proposed a buffer of between 80 feet to 100 feet of buffer between the development and the vernal pool. Mr. Titlow further testified that the proposed site design would not meet the requirement of post-development storm water control measures for storm water runoff in that the design should be adequate to remove 80% of the total suspended solids contained in storm water runoff for the proposed site. He indicated that modifications to the storm water drainage design were necessary to protect the watercourses on the site. (Return of Record Item 91).
The four reasons cited by the Commission for denying the application were based not only on the evidence presented before the Commission, but also on the failure of the applicant to present the information necessary to either approve the plan or identify specific amendments to the plan. In its deliberation on the application, the Commission noted that it was required by the Affordable Housing Act to consider reasonable and acceptable modifications to the plan to permit its approval. Considering all of the evidence submitted during the hearings, the Commission found insufficiencies, and was therefore unable to propose specific modifications to the plan in order to warrant its approval. (Supplemental Return of Record p. 5-110. CT Page 1791
III. JURISDICTION
 A. Aggrievement
Connecticut General Statutes Section 8-8 governs appeals taken from a Planning and Zoning Commission to the Superior Court. A statutory right to appeal must be in strict compliance with the statutory provisions by which it is created. Testa vs. Waterbury, 55 Conn. App. 264, 268,738 A.2d 740 (1999). Pleading and proof of aggrievement are pre-requisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. Jolly vs. Zoning Board of Appeals, 237 Conn. 184,192, 676 A.2d 831 (1996). "In the case of a decision by a zoning commission an aggrieved person includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the boards." General Statutes Section 8-8
(a)(1). Pursuant to Connecticut General Statutes Section 8-30g (b) "any person whose affordable housing application is denied may appeal such decision pursuant to the procedures of the section. Thus, under Section8-30g (b) only an affordable housing applicant may initiate an appeal from a decision of a commission." Ensign Bickford Realty Corp. vs. ZoningCommission, 245 Conn. 257, 267, 715 A.2d 701 (1998). Said section further provides that "except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28-8-30 or 8-30a, as applicable. Thus, as the reference to Section 8-8 would indicate, it is clear that aggrievement must be shown in an affordable housing appeal.TN Associates vs. Town of New Milford Planning Zoning Commission,
Superior Court, Judicial District of New Britain, Docket Number 492236 (November 10, 1999) (Holzberg, J.)
Aggrievement is established if there is a possibility, as distinguised from a certainty, that some legally protected interest has been adversely affected. We traditionally have applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision." Gladysz vs. Planning and Zoning Commission,256 Conn. 249, 255-56 (2001). The plaintiff has the burden of pleading and proving aggrievement. McNally vs. Zoning Commission, 225 Conn. 1, 6,621 A.2d 279 (1993).
Landworks Development, LLC claims that it is the option purchaser of the subject property and thus, has a sufficient interest in the zoning decision to have standing to take an appeal. R R Pool Home Inc. vs.Zoning Board of Appeals, 43 Conn. App. 563, 570 (1996). Shapero vs.CT Page 1792Zoning Board, 192 Conn. 367, 376 (1984). The applicant submitted a written option agreement in order to substantiate its position. The Defendant/Appellees argue that the option agreements submitted are dated May 12, 1999, and expired in six months, in the absence of a written option extended at the option of Landworks Development. One of the principals of Landworks Development testified that Landworks has signed the necessary letter to extend the option agreement and that an agreement was still in full force and effect. Defendant/Appellees argue that since the written letters were never entered into evidence the applicant does not have standing, and the appeal should be dismissed on that basis. It is axiomatic that the determination of aggrievement presents a question of fact for the trial court. McNally vs. Zoning Commission, 225 Conn. 1,7 A.2d 2798 (1993).
It was held in Bethlehem Christian Fellowship, Inc. vs. Planning andZoning Commission, 58 Conn. App. 441, 446, 447 (2000), that even where the date for performance of a contract has passed, if the parties treat the contract as still being in effect, then the contract purchaser is aggrieved because time is not of the essence of the contract. In Fletchervs. Planning and Zoning Commission, 158 Conn. 497, 502, 503 (1969) it was held that the contract purchaser of a lot conditioned on a zone change involved in an appeal was aggrieved even without any evidence of financial loss, or any special injury from the denial of the application. The interest which supports aggrievement need not necessarily be an ownership interest in the property. Mystic Marinelife Aquarium,Inc. vs. Gill, 175 Conn. 483, 493 (1978). While it may have been preferable to introduce the written extensions to the option agreement, it is clear to the court that the parties treated the contract as being in effect. The options do not contain any time of the essence language. Therefore, the Court finds that Landworks Development, LLC is an aggrieved party within the meaning of the statute.
B. Timeless and Service of Process
Pursuant to Connecticut General Statutes Section 8-8 (b), as amended by Public Act No. 01-47, an appeal shall be commenced by service of process within fifteen days from the date that the commission's Notice of Decision is published. Further, it shall be commenced by leaving the process with or at the abode of the clerk or Chairman of the Commissioner and with the clerk of the municipality. See Statute Sec. 8-8 (F) as amended by Public Act No. 01-17
Landworks Development served process on the Town Clerk for the Town of Farmington and Chairman of the Zoning Commission on October 27, 2000. The legal notice of the denial of the application was published on October 12, 2000. This appeal, therefore, is timely and the proper parties were CT Page 1793 served pursuant to Connecticut General Statutes Section 8-8 (e), and 8-30
(g). For appeals brought pursuant to Connecticut General Statutes Section8-8 (e)and 8-30 (g), the citation is analogous to the writ used to commence a civil action and directs a proper officer to summon the agency whose decision is appealed. Tolly vs. Department of Human Resources,225 Conn. 13, 18-19, 621 A.2d 719 (1993). The file contains a proper citation
IV. SCOPE OF JUDICIAL REVIEW
At the time the instant appeal was filed on October 27, 2000, General Statutes (Rev. to 1999) Section 8-30g was in effect and provided, in relevant part:
(A) As used in this section: (1) Affordable housing development means a proposed housing development which is (a) assisted housing, (b) in which not less than twenty-five per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at or below, prices which will preserve the units affordable housing, as defined in Section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income or eighty percent of the state median income, whichever is less, for at least thirty years after the initial occupation of proposed development; (2) Affordable housing application means any application made to a commission in connection with an affordable housing development by a person who proposed to develop such affordable housing; (3) Assisted housing; means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under Chapter 319 or Section 1437 of Title 42 of the United States code.
(B) Any person whose affordable housing application is denied or is approved with restrictions which have substantial adverse impact on the viability of the affordable housing development . . . may appeal such decision pursuant to the procedures of the section.
(C) Upon an appeal taken under subsection (b) of this section, the burden shall be on the Commission to prove, based upon the evidence in the record compiled before such commission that (1)(A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the Commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the CT Page 1794 affordable housing development. If the Commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.
(D) Following a decision by a Commission to reject an affordable housing application . . . the applicant may; within the period for filing an appeal of such decision, submit to the Commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the Commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the Decision of the Commission of the original application.
Connecticut General Statutes (Rev. to 1999) Section 8-39a provides that "affordable housing" means housing for which persons and families pay thirty percent or less their annual income, where such income is less than or even to the area median income for the municipality in which such housing is located, as determined by the United States Department of Housing and Urban Development.
The scope of judicial review of a planning and zoning commission's decision in an application brought under Connecticut General Statutes Section 8-30g was changed by the Connecticut Supreme Court's July 17, 2001 decision in Quarry Knoll III Corporation et al. Planning and ZoningCommission of the Town of Greenwich et al., 256 Conn. 674 (2001). Prior to the Quarry Knoll decision, the Supreme Court held in ChristianActivities Council, Congregation vs. Town Council of Town ofGlastonbury, 249 Conn. 566, 583 (1999) that a Commission had the burden on such an appeal to marshal the record evidence to support its decision and to persuade the reviewing court that there is "sufficient evidence"; in the record to support the reasons given, in a "formal, official, collective statement", for its decision under Connecticut General Statutes Section 8-30g (c)(1). If "sufficient evidence" in the record was demonstrated reasonably to support the Commission's determination as to all four parts of the standards for any one of the reasons given for its decision, the Commission's decision had to be upheld. ChristianActivities Council, Congregational vs. Town Council of the Town ofGlastonbury, 249 Conn. 566, 583, 589-92 (1999).
In Quarry Knoll, the Court analyzed the effect of Public Act 00-206 section 1(g) which took effect on October 1, 2000 upon the scope of judicial review. It determined that Act clarified the statutory standard and could therefore, be applied retroactively. While a Commission's collective reasons for denying an affordable housing application are still to be upheld under CGS Section 8-30g (c)(1)(A) if there is CT Page 1795 sufficient record evidence to support them, the scope of judicial review under Subsections (B)(C) and (D) of the same statute has been changed by the Quarry Knoll Court.
The Quarry Knoll Court, at pp. 726-27, described a two-step judicial review process for each reason articulated for a commission's decision:
 In summary, we conclude, on the basis of our review of the legislative history, that P.A. 00-206, Section 1 (g), was intended to clarify the original intent of Section 8-30g (c), namely, that there are two standards of judicial review; under Section 8-30g (c)(1)(A) through (D). We begin by noting the established rule that as in a typical zoning appeal, the court's function in an appeal under Section 8-30g (c) is to review the record made in zoning proceeding. Christian Activities Council, supra 249 Conn. 582. Under Section 8-30g (c)(1)(A), the court must determine, as it had prior to the enactment of P.A. 00-206, Section 1(g), whether the Commission has shown that its decision is supported by "sufficient evidence" in the record. Under subparagraphs (B), (C), and (D) of the statute, however, the court must review the commission's decision independently, based upon its own scrupulous examination of the record. Therefore, the proper scope of review regarding whether the Commission has sustained its burden of proof, namely that: its decision is based upon the protection of some substantial public interest; the public interest clearly outweighs the need for affordable housing; and there are no modifications that reasonably can be made to the application that would permit the application to be granted, requires the court not only to ascertain whether the Commission's decision is supported by sufficient evidence, but also to conduct a plenary review of the record in order to make and independent determination on this issue. Cf. State vs. Pinder, 250 Conn. 385, 409-12 736 A.2d 857
(1999).
The difference between the Christian Activities Council and QuarryKnoll review processes is that for the three-part statutory standard of Subsections (B), (C) and (D) to which each commission reason is held, theChristian Activities Council Court gave deference to the Commission's determination, so long as it was supported by "sufficient evidence" in the record; while under Quarry Knoll, the reviewing court makes a CT Page 1796 scrupulous, plenary review of the record and arrives at its own independent determination of whether the Commission's reasons to deny an application meet the three-part test.
When the trial court reviews the Commission's decision it only considers the collective reasons stated by the agency. Kaufman vs. ZoningCommission, 232 Conn. 122, 142 (1995). This requires the Commission to state its reasons on the record in the form of a formal official collective statement, and the agency must give all its reasons for a denial, because only those reasons will be considered on appeal.Christian Activities Council, Congregational vs. Town Council of Town ofGlastonbury, 249 Conn. 566, 594, 595 (1999). The Commission's collective reasons are those stated by it at the decision making session. The reasons must be the collective reasons given when the agency voted on the application. Mackowski vs. Planning and Zoning Commission,59 Conn. App. 608, 615 (2000). With affordable housing applications, the same as conventional zoning applications, the trial court considers only the collective reasons assigned by the agency, and not the reasons of individual agency members. Schwartz vs. Town Planning and ZoningCommission, 159 Conn. 534, 541 (1970). The reasons for the denial of the application must relate to the public interests of the state to be protected. Town Close Associates vs. Planning and Zoning Commission,42 Conn. App. 94, 98 (1996). If any of the reasons actually assigned by the Commission are not supported by sufficient evidence, they are not considered further. If the Commission meets the initial burden of proof that there is sufficient evidence in the record to support a reason for denial, the trial court then considers the three other statutory factors; namely, whether the decision is necessary to protect substantial public interests in health, safety, or other matters which the Commission may legally consider; that such public interests clearly outweigh the need for affordable housing; and that such public interests cannot be protected by reasonable changes to the affordable housing development. As determined by Quarry Knoll, the Commission has the burden of proof on all of these issues, 256 Conn. at p. 277, 733, 735. Moreover, the trial court engages in a plenary review and makes its own independent determination whether the Commission has satisfied its burden of proof on these three factors. ID at p. 727, 735.
In order to prove that the Commission's decision was necessary to protect substantial public interests and health, safety or other matters which the Commission could legally consider it must establish (1) that it reasonably could have concluded that "substantial public interests" were implicated by the action based upon the evidence in the administrative record and (2) that it would reasonably have concluded from the Record evidence that its decision was necessary, namely that any public interests could not have been protected if it had approved the CT Page 1797 application, which is more than a mere possibility that granting the application would harm the public interests. Christian ActivitiesCouncil, Congregational vs. Town Council, 249 Conn. at p. 588, 589
(1999). The burden of proof on the Commission to show that such public interests clearly outweigh the need for affordable housing has similar considerations. ID pp. 590-592. The need for affordable housing is determined on a local and not a regional basis. ID. at p. 598. Farmington fits under the statute since its rate of affordable housing is under 8%, well below the suggested 10% imposed by statute. In order to meet the burden of proof that the public interests cannot be protected by reasonable changes to the affordable housing development, the Commission has the burden of proof that the public interests could not be protected by reasonable changes to the size and density of the zone or to the specified designs presented by applicant. Kaufman vs. Zoning Commission,232 Conn. at 137 (1995).
V. DISCUSSION
The purpose and statutory scheme of the affordable housing statute, Section 8-30g, is to allow affordable housing whether or not it is otherwise permitted under the zoning regulations. Provided the statute is followed as to the requirements for affordable housing, and the specific site which it is proposed is suitable for that purpose, the underlying zoning of the property makes no difference. Stated another way, an affordable housing application can be approved even though it does not comply with the existing zoning regulations for the zone in which it proposed because Section 8-30g supercedes the usual zoning standards.Wisniowski vs. Planning Commission, 37 Conn. App. 303, 315, 318 (1995).
The Commission stated reasons for its denial citing four substantial public interests which it found would be harmed by this application. These reasons were (1) traffic impacts and traffic circulation including traffic safety, 2) public safety, (3) unreasonable impairment to the public trust in natural resources pursuant to Section 22a-19 of the Connecticut General Statutes, and (4) environmental impacts. The Court must evaluate each reason individually, since any one valid reason is sufficient to justify the Commission's action. Primerica vs. Planning andZoning Commission, 211 Conn. 96 (1989).
A. Traffic Impacts and Traffic Circulation Including Traffic Safety
The Commission's denial identified traffic impacts and safety on Batterson Park Road as a substantial public interest that will be harmed by approval of the Application (Return of Record, Item 30). It indicated that there would be detrimental impacts because of the number of trips to be generated because Batterson Park Road has not been improved to the CT Page 1798 standards of a secondary arterial road by the town, because the road contains curves and a 90 degree intersection with Two Mile Road; and because the neighborhood surrounding the Development contains no sidewalk network. The explanation as to anticipated effect on public safety is vague. The Commission simply states that the traffic study did not consider these issues. Further, the Commission denied the application for the claimed failure of the applicant to analyze roads in New Britain and factor in potential changes to area highway ramps.
While courts have recognized that traffic safety constitutes a substantial public interest, they have required that a Commission demonstrate no only that those concerns are legitimate, but also that they outweigh the needs for affordable housing. The courts have rejected Town concerns regarding traffic generated by a proposed development where those concerns are based on potential safety issues or concerns.Kaufman, supra at p. 162; Town Close Associates, supra at p. 94. In the instant appeal the application and traffic engineers' report show that Landworks will correct an existing 225 foot sight line deficiency from Blodgett Roy Drive on Batterson Park Road (Return of Record, Item 5), and will provide a bypass lane on Batterson Park Road to safely accommodate turning movements into the Property, (Return of Record, Ex 89 p. 90), and will provide a traffic signal at the intersection of South and Two Mile Road to correct an existing deficient situation. There were no other traffic experts or town engineers' reports to refute Landworks traffic evidence showing more than sufficient roadway capacity for this Development and no reduction in the level of service of relevant intersections. (Return of Record pp. 26-27, 77-88). The Farmington Police Department reported the level of accidents in this area to be normal (Return of Record, Item 5).
It is not enough for the Commission to state that traffic safety will be impacted because density will be increased beyond levels called for in the Plan of Development, thereby generating more traffic. This rational is true for most, if not all affordable housing appeals. Our Supreme Court has held that a town plan is merely advisory. The purpose of the plan is to set forth the most desirable use of land and an overall plan for the town. Because the overall objectives contained in the town plan must be implemented by the enactment of specific regulations, the plan itself can operate only as an interpretive tool. Smith vs. Zoning Boardof Appeals, 227 Conn. 71, 87-88, 629 A.2d 1089, Cert. Denied, 510, U.S. 1164, 114 S.Ct. 1190, 127 L. Ed 2d 540 (1993). If a Planning and Zoning Commission were allowed to deny any affordable housing application because the application exceeded the density called for by any zone in the town, then it would undermine the very important objective of affordable housing. Under the Planning and Zoning Commission's interpretation, a town could utilize zoning to impede a developer from CT Page 1799 appealing under the statute. West Hartford Interfaith Coalition vs. TownCouncil supra 228 Conn. 511 (1994). The issue for the Court is whether there is some specific hazard to a substantial public interest in health or safety which the Commission may legally consider. Kaufman, supra, p. 160, 162. The record must contain evidence quantifying the potential level of harm to traffic safety to be expected by higher density development on the property, and then estimate the probability that this harm will occur ID. The record is devoid of this requisite showing on the part of the Commission. Speculation and vague concerns for density are not enough. The Court finds that the Commission did not have sufficient evidence in the record to deny the application on the basis of traffic impacts and traffic circulation including traffic safety.
B. Public Safety
One of the reasons that the Commission denied the Application was due to Landworks failure to provide a report from the Fire Marshall on fire protection, and for a general concern regarding traffic safety on Batterson Park Road, and in the area. The development plans call for all buildings to have smoke detectors and sprinklers per code as well as sound insulated fire separation walls between the units (Return of Record 5, Tab 21). Landworks indicated that the plans for fire service delivery had been reviewed with the Farmington Fire Marshall and the Fire Marshall had no concerns regarding the design or ability to provide fire service. (Return of Record, pp. 43-4; 91, pp. 36-7). There is no evidence in the record to suggest that a public safety issue exists as to the ability to provide fire protection to this development.
The Commissions denial identified traffic impacts and safety on Batterson Park Road as a substantial public interest that will be harmed by approval of the application. (Return of Record, Item 30). It stated that there would be detrimental impacts because of the reasons stated above. Again, the Commission never identified how the physical characteristics implicated public safety or make the road unsafe for this development. The Commission has failed to meet its burden of proof in this regard. The Court finds that there is not sufficient evidence in the record to justify the denial of this application on the basis of public safety issues.
 C. Unreasonable Impairment to the Public Trust In Natural Resources Pursuant to Section 22a-19 of the Connecticut General Statutes and Environmental Impacts.
In view of the fact that there is, necessarily, overlap on the impairment of natural resources and environmental impact the Court will discuss these issues together. CT Page 1800
The legislative finding contained in General Statutes Section 22a-36
provides, inter alia, that the inland wetlands and watercourses of the State of Connecticut are an indispensable and irreplaceable, but fragile, natural resource with which the citizens of the state have been endowed. The preservation and protection of the wetlands and watercourse is in the public interest. It is, therefore, the purpose of Sections 22a-36
to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses. This protection is accomplished by minimizing the disturbance and pollution of watercourses and preventing "damage from erosion, turbidity or situation deterring and inhibiting the danger of pollution, protecting the quality of wetlands and watercourses, by providing an orderly process to balance the need for economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn". Huck vs. Inland Wetlands Watercourse Agency, 202 Conn. 525,551 (1987). In furtherance of this policy, every Connecticut municipality is required to establish or designate an agency to implement and enforce wetlands regulations. Connecticut General Statutes Section 22a-42.
In 1989, the Supreme Court in Cioffoletti vs. Planning and ZoningCommission, 209 Conn. 544 (1989), determined that the Ridgefield Planning and Zoning Commission, acting as a municipal inland wetlands and watercourses agency, had authority to deny excavation activities in non-wetland areas causing impacts on wetland resources. The Court held inAaron vs. Conservation Commission, 183 Conn. 532, 542 (1981), after a review of the wetlands statutes, that an examination of the act reveals that one of its major considerations is the environmental impact of proposed activity, on wetlands and watercourses, which may, in some instance, come from outside the physical boundaries of wetland or watercourses. The court held, therefore, that activity that occurs in non-wetland areas, but that affects wetlands areas, falls within the scope of regulated activity. Thus, the defendant in that case acted within its authority in regulating mining and excavations in areas adjacent to the inland wetlands, because there was evidence that these activities would adversely affect the wetlands areas. ID. at p. 558.
In further recognition of the important public interest in wetlands and watercourse protection, the legislature also amended the zoning statutes to require that applicants for zoning development approvals must seek wetlands permits at or before the time zoning permits are sought. Public Act 87-533. With respect to site plan approvals, Section 8-3 (g) of the Connecticut General Statutes provides: If a site plan application CT Page 1801 involves an activity regulated pursuant to Sections 22a-36 to 22a-45, inclusive the applicant shall submit an application for a permit to the agency responsible for administration of the inland wetlands regulations not later than the day said application is filed with the zoning commission. The decision of the zoning commission shall not be rendered on the site plan application until the inland wetlands agency has submitted a report with its final decision.
The initial plan submitted by Landworks failed to identify several wetlands and watercourses on the site, which would be directly impacted by the development proposed. Although the applicant modified the plans when these wetlands were discovered, the evidence in the record establishes that these adjustments did not change the fact that the proposed development would continue to impact wetlands and watercourses on the site. Mr. Titlow testified that the proposed plan would cause the introduction of sediment and pollutants in storm water into the watercourses and wetlands on the site. There was further testimony from Mr. Titlow and George Logan to the effect that the function of a vernal pool depends upon the maintenance of a sufficient upland buffer to enable the woodland species to utilize the pool for reproduction. The experts disagreed upon the necessary buffer to protect this environmental resource. However, the agency is afforded the authority to make such a determination. The Farmington Inland Wetlands and Watercourses Agency never received an application on the matter. Since the applicant has never applied for wetland permits associated with its 384-unit development plan, and no final decision from the local wetlands agency has been issued, The Commission was prohibited by Connecticut General Statute Section 8-3 from issuing site plan approval. Green vs. RidgefieldPlanning and Zoning Commission, (1993) D.N. 7560, Judicial District of Hartford-New Britain at New Britain (January 6, 1993). In its denial of the application, the Commission found that Mr. Titlow's testimony regarding the 1,000 to 1,600 foot setbacks was more prudent to avoid detrimental impact to the vernal pool ecosystem. The Commission stated that the applicant's site plan contains buildings, driveways and parking areas within a radius of 150 feet which may threaten the population of species which depend upon this vernal pool for their survival. (Return of Record, Item 30). Furthermore, although Mr. Logan claimed that a mere 85 feet is an adequate setback, his own research supported the need for as much as 600 feet of setback to enable the proper functioning of these valuable environmental resources. (Return of Record, Item 36, at p. 7)
The two wetland dependent or obligate species in this vernal pool are the wood frog and the spotted salamander. Landworks argues that the Commission had no evidence upon which to base its decision requiring a 400-foot buffer to the vernal pool. However, both George Logan and Mr. Titlow agreed that the function of a vernal pool depends upon the CT Page 1802 maintenance of sufficient upland buffer to enable the woodland species to utilize the pool for reproduction. Mr. Titlow felt a buffer of 1,000 feet to 1,600 feet setbacks was more prudent to avoid detrimental impact to the vernal pool ecosystem. Mr. Logan's own research supports the need for as much as 600 feet of set back to enable the proper functioning of that valuable environmental resource. (Return of Record, Item 36, at p. 7).
The vernal pool is a "unique environment" upon which a number of wildlife species are dependent; some to the point that they cannot successfully reproduce anywhere else. Uplands surrounding vernal pool wetlands are unique biological habitats, integral parts of the wetlands ecosystem, and critical to the survival of amphibians, including spotted salamanders and wood frogs. Because vernal pools are functionally tied to their immediate surroundings, permanent changes to topography and vegetation from the development of land can pose the greatest risk to the vernal pool habitat. Such changes may be harmful regardless of whether they occur outside of the vernal pool itself, within the contributing watershed or much further away, due in part to the fact that species such as spotted salamanders move up to a half mile from vernal pools, with distances of about 400 feet common for most populations. Changes that take place outside the vernal pool can prevent wildlife from returning to the pool to breed or considerably diminish re-population. For these reasons, development is the principal force of habitual fragmentation, a phenomenon that adversely impacts vernal pools. (Return of Record, Ex. 30) Landwork's argument that there are not many spotted salamanders in the vernal pool may, in fact, stress the need for an adequate buffer for this vernal pool, in order to preserve the species in the habitat. Certainly, there was sufficient evidence to justify both the need for the buffer, and for a buffer of at least 400 feet from the vernal pool.
Landworks stresses the argument that its revised plans do not involve the wetlands or vernal pool. It fails to recognize, however, the impact of its plans upon these areas. See Cioffoletti, supra at p. 544.
As indicated above, failure by an applicant to comply with Section 8-30
(g) is grounds for denial of a zoning application, including an affordable housing application. Green vs. Ridgefield Planning and ZoningCommission, 8 Conn.L.Rptr. 137. See also Gagnon vs. PlanningCommission 24 Conn. App. 413, 425, 588 A.2d 1385 (1991).
The Court finds that there was sufficient evidence to support both the requirements of a wetland permit and the conclusion that an undisturbed setback of 400 feet is necessary around the vernal pool to avoid undue environmental impacts. The record also includes extensive evidence from Mr. Titlow regarding the applicant's failure to propose a storm water management and a treatment system which would avoid impacts to the brook CT Page 1803 and wetlands on the property, such as the discharge of pollutants, sedimentation erosion.
The applicant's arguments with regard to the environmental impact rely upon the testimony of their experts. However, an administrative agency is not required to believe any witness, even an expert; nor is it required to use in any particular fashion any of the materials presented to it.Kaufman, supra at pp. 56-57. It is clear to the Court that sufficient evidence existed for the Commission to make its determination. The Court must now evaluate that decision based upon the three-prong test of QuarryKnoll II. In its consideration this Court must conduct its own plenary review of the record.
There is substantial evidence to justify the Commission's decision. Further, the decision is necessary to protect substantial public interests in health, safety, or other matters which the Commission may legally consider. Certainly, the environment resources are recognized as a vital public interest that may serve as a basis to deny an affordable housing plan under Connecticut General Statute 8-30g Green vs. RidgefieldPlanning and Zoning Commission, supra.
The Court further finds that these public interests clearly outweigh the need for affordable housing. The Town of Farmington has taken substantial steps to meet the recognized need for affordable housing in the community. Although the town is below the ten percent guideline suggested by the statute, the Court notes that Farmington has adopted affordable housing regulations and a plan of development that encourages such housing in Farmington. Indeed. 507-units of affordable housing were approved since the plan of development was adopted in 1995. (Return of Record, Item 30, p. 4). While the need for such housing certainly continues, the Town's efforts in this regard must be considered in balancing the interests of environmental protection, and the need for the particular affordable housing proposed by the plaintiff. Finally, the Court finds that the public interests cannot be protected by reasonable changes to the affordable housing development. The applicant failed to provide sufficient evidence regarding identity and protection of wetlands and watercourses resource on the site. Therefore, the Commission was unable to identify particular modifications to the plan that would adequately protect these resources. Further, the applicant failed to provide revised plans to the Commission's proposed 400-foot buffer zone of the vernal pool. Without these revisions, any modification suggested by the Court would be the product of guesswork and speculation. This Court could not make reasonable modifications on the information in the record. The Commission has met its burden of proof with regard to the sufficient evidence to justify its decision, and the test of Quarry KnollII. CT Page 1804
VI. CONCLUSION
Based upon the foregoing, the Court finds that there is sufficient evidence in the record to support the Town of Farmington's Planning and Zoning Commission's decision denying the instant application. The evidence in the record further supports a finding that the Planning and Zoning Commission has met its burden under the dictates of Connecticut General Statutes Section 8-30g and Quarry Knoll II.
Accordingly the appeal is dismissed.
THE COURT
Eveleigh, J.